## CHARLES LARNED *vs.* JOHN S. ANDREWS.

The neglect or refusal of a wholesale dealer to pay the internal revenue tax imposed on him in respect and proportion to his sales, by the U. S. St. of 1864, *c.* 173, § 79, does not invalidate sales made by him during the period of his default, or prevent his recovery of the price of the goods sold.

CONTRACT on an account annexed for the price of goods sold and delivered by the plaintiff to the defendant. Writ dated February 11, 1870. The case was referred to an auditor, who reported that on the proofs before him the plaintiff was entitled to recover $5816.17, the full amount of the account, all the goods charged in which were sold in 1869, the first item bearing date of August 12 of that year.

At the trial in the superior court, before *Reed*, J., the plaintiff rested his case upon the auditor's report, and the defendant submitted the following offer of proof:

" The defendant offers to prove that the plaintiff was a wholesale dealer in and seller of goods and merchandise in Boston during all the time in which he claims in this action to have sold the goods, the price of which he sues for ; that he had been a wholesale dealer in and seller of goods and merchandise in said Boston for more than two years before the first day of May 1869, and so continued to be after said May 1 till the commencement of this action ; that during all said time he sold goods and merchandise in said Boston to the amount of more than fifty thousand dollars in each and every year ; that, after said May 1 and before August 12 then next following, the said plaintiff had sold in said Boston goods and merchandise to the value and amount of more than twenty-five thousand dollars ; and that the plaintiff never at any time paid the special tax to the government of the United States provided by the laws thereof to be paid by a wholesale dealer, namely, fifty dollars a year, and never at any time made a return to the assistant assessor appointed by the government of the United States, of his sales each year beyond the amount of fifty thousand dollars a year, as required by the laws of the United States to do ; and that the goods, the price of which is sued for in this action, were sold to the defendant by the plaintiff while

the plaintiff was pursuing the calling and business of a wholesale dealer, and as part of his said business."

The judge excluded the evidence thus offered, upon the ground that the facts, if proved, would be no defence to the action ; the jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*J. G. Abbott*, for the defendant, cited U. S. Sts. of 1866, *c.* 184, § 9; 1867, *c.* 169 ; 14 U. S. Sts. at Large, 113, 471; *Atlas Bank* v. *Nahant Bank*, 3 Met. 581 ; *Ames* v. *Gilman*, 10 Met. 239 ; *Bosworth* v. *Swansey*, Ib. 163 ; *Ball* v. *Gilbert*, 12 Met. 397 ; *Pattee* v. *Greely*, 13 Met. 284 ; *Stebbins* v. *Leowolf*, 3 Cush. 137 ; *White* v. *Buss*, Ib. 448 ; *Gregg* v. *Wyman*, 4 Cush. 322; *Western Bank* v. *Mills*, 7 Cush. 539 ; *Duffy* v. *Gorman*, 10 Cush. 45 ; *Merriam* v. *Stearns*, Ib. 257 ; *Foster* v. *Thurston*, 11 Cush. 322 ; *Quarrier* v. *Colston*, 1 Phillips, 147, 151 ; *Ritchie* v. *Smith*, 6 C. B. 462 ; *Langton* v. *Hughes*, 1 M. & S. 593 ; *Aubert* v. *Maze*, 2 B. & P. 371 ; *Wheeler* v. *Russell*, 17 Mass. 258 ; *Springfield Bank* v. *Merrick*, 14 Mass. 322 ; *Worcester* v. *Eaton*, 11 Mass. 368 ; *Swett* v. *Poor*, Ib. 549 ; *Dwight* v. *Brewster*, 1 Pick. 50 ; *Babcock* v. *Thompson*, 3 Pick. 446 ; *Williams* v. *Woodman*, 8 Pick. 78 ; *Allen* v. *Hawks*, 13 Pick. 79 ; *White* v. *Franklin Bank*, 22 Pick. 181; *Cannon* v. *Bryce*, 3 B. & Ald. 179 ; *Webb* v. *Brooke*, 3 Taunt. 6 ; *McKinnell* v. *Robinson*, 3 M. & W. 434 ; *Cambioso* v. *Maffett*, 2 Wash. C. C. 98 ; *Armstrong* v. *Toler*, 11 Wheat. 258 ; *James* v. *Catherwood*, 3 D. & R. 190 ; *Holman* v. *Johnson*, Cowp. 343 ; *Cope* v. *Rowlands*, 2 M. & W. 149 ; *Tyron* v. *Thomas*, McCleland & Younge, 119 ; *Bensley* v. *Bignold*, 5 B. & Ald. 335 ; *Stephens* v. *Robinson*, 2 Cr. & Jerv. 209 : *Mitchell* v. *Smith*, 1 Binn. 110.

*J. B. Richardson*, for the plaintiff.

MORTON, J. The goods, for the price of which this suit was brought, were sold and delivered by the plaintiff to the defendant. The defendant offered to show that, during the time when the goods were sold, the plaintiff was a wholesale dealer and had not paid the special tax imposed upon wholesale dealers by the seventy-ninth section of the act of congress approved June 30, 1864. U. S. St. 1864, *c.* 173, § 79 ; 13 U. S. Sts. at Large, 251.

The superior court ruled that these facts, if proved, would furnish no defence to the action, and excluded the testimony.

We are opinion that this ruling was correct. The general principle, that no action based upon a contract which is illegal can be maintained, is too well established to need the citation of authorities. But, to make this principle applicable in any case, it must appear that the contract or transaction upon which the action is based was prohibited by law. The question in this case therefore is, whether the act of June 30, 1864, is to be construed as prohibiting every sale made by a wholesale dealer who neglects to pay the special tax imposed by that act.

The seventy-first section of the act is as follows : " No person, firm, company or corporation shall be engaged in, prosecute or carry on any trade, business or profession, hereinafter mentioned and described, until he or they shall have paid a special tax therefor in the manner hereinafter provided." The seventy-third section provides that any one who shall exercise or carry on any trade, business or profession, for the carrying on of which a special tax is imposed by law, without payment thereof as in that behalf required, shall be subject to fine and imprisonment. The seventy-ninth section provides that wholesale dealers, whose annual sales do not exceed fifty thousand dollars, shall pay fifty dollars ; and if their annual sales exceed fifty thousand dollars, for every additional thousand dollars they shall pay one dollar, and the amount of all sales beyond fifty thousand dollars shall be returned monthly to the assistant assessor, and the tax thereon shall be assessed and paid monthly, as other monthly taxes are assessed and paid. The section further provides that every person whose business it is to sell goods, with certain exceptions not material to this case, shall be regarded as a wholesale dealer, whose annual sales exceed twenty-five thousand dollars.

It is to be observed that the act does not expressly declare that sales by a wholesale dealer who neglects to pay the tax shall be illegal. The tax is not laid upon each sale, but upon the business or calling. The illegality does not attach to the sale, but consists in not paying the tax imposed upon the business. If a dealer's annual sales exceed twenty-five thousand dollars, and he neglects

to pay the tax imposed on wholesale dealers, he is liable to the same penalty, without regard to the number of his sales. The payment of the tax is not a condition precedent to the right to make sales. If his sales exceed fifty thousand dollars, the amount of the tax is ascertained by his return monthly of sales previously made by him. Thus all sales in excess of fifty thousand dollars are clearly legal at the time when made ; and it would be a forced construction to hold that they are made illegal by relation back, because the seller neglects to pay a tax imposed upon him.

These and other considerations lead us to the conclusion that it was not the intention of congress to prohibit and make unlawful each sale made by a wholesale dealer who neglects to pay his tax. The object of the tax was to provide internal revenue to support the government, and not to regulate domestic trade in the states. It imposes a tax upon wholesale dealers, and provides a penalty if they neglect to pay such tax. We think this was designed to operate upon the person, and not upon the business. If congress had intended to subject the dealer neglecting to pay his tax to the additional liability of having all his sales rendered illegal, we think they would have so declared in unequivocal terms. We find that in § 180 it is provided that, if any person liable to pay any tax upon goods or manufactures shall sell the same before the tax is paid, with intent to evade the tax, every debt contracted in such sale shall be void, and the collection thereof shall not be enforced in any court. The absence of any such provision in regard to sales by wholesale dealers raises a strong implication that it was not the intention of congress to prohibit such sales. The power to regulate domestic trade belongs exclusively to the states. It cannot be exercised by congress except where it is strictly incidental to the exercise of powers clearly granted to it. *License tax cases,* 5 Wallace, 462. *Pervear* v. *Commonwealth,* Ib. 475. *Commonwealth* v. *Holbrook,* 10 Allen, 200. It is not to be presumed that congress intends to regulate domestic trade in the states, as incidental to its power to levy taxes, unless such intention is clearly expressed.

Upon a careful consideration of the statute in question, we are of opinion that the sales by the plaintiff were not prohibited or

illegal, and that he is entitled to recover. The numerous cases cited by the defendant do not apply to the case at bar. They are cases where the specific contract or transaction upon which the plaintiff's action was founded was prohibited by law.

A very similar question arose in *Smith* v. *Mawhood*, 14 M. & W. 452. The act of 6 Geo. IV. *c.* 81, § 26, provided that if any person should carry on any trade or business thereinafter mentioned, without taking out a license, he should forfeit and lose the penalties thereinafter named. In an action of debt for tobacco sold, the defence was that the plaintiff had not taken out a license required by this section. It was held that the act of sale was not unlawful. Baron Parke said : " I think the object of the legislature was not to prohibit a contract of sale by dealers who have not taken out a license pursuant to the act of parliament. If it was, they certainly could not recover, although the prohibition were merely for the purpose of revenue. But its object was not to vitiate the contract itself, but only to impose a penalty on the party offending, for the purposes of the revenue."

The question involved in the case at bar has been carefully considered in a recent case in Vermont, and the court arrived at the same conclusion which we have reached. *Aiken* v. *Blaisdell*, 41 Verm. 655, 666.          *Exceptions overruled.*