### DURSUM *v.* BENEDICT.

CORPORATIONS—"BLUE SKY LAW"—SALE OF STOCK BY OWNER—"DEALER."

Under 3 Comp. Laws 1915, § 11954, the sale of stock in a corporation by the owner, although some of it stood in the names of members of his family, without securing a license under the provisions of the "blue sky law" (3 Comp. Laws 1915, § 11945 *et seq.*), was not in violation thereof, since he was not a "dealer" within the terms of said section.

Appeal from Kent; Perkins (Willis B.), J. Submitted January 15, 1920. (Docket No. 37.) Decided February 27, 1920.

Bill by William A. L. Dursum and another against Laurance D. Benedict for an accounting, and to enjoin the collection of certain promissory notes. From a decree dismissing the bill, plaintiffs appeal. Affirmed.

*Grant Sims*, for plaintiffs.

*Hatch, McAllister & Raymond*, for defendant.

Fellows, J. Plaintiff Clinton E. Lincoln and one James R. Morrill were partners, doing business as the Universal Humidifier Company of Grand Rapids. Defendant, a mechanic by trade, was superintendent of a manufacturing plant, earning $50 a week besides a bonus which was paid by the company. The partnership was manufacturing and selling a humidifier. Its assets aggregated about $600 and Lincoln had applications pending for patents. The parties entered into an agreement which contemplated the organization of a corporation to take over the business of the partnership. Defendant agreed to put in $6,000. Of this sum Lincoln and Morrill were each to have $500, and the balance was to be used by the corporation for the purposes of the business. Defendant was to have a salary of $50 per week and Lincoln one of $35 per week. A reputable attorney was employed to prepare the articles of association and perfect the organization. On June 29, 1918, the articles of association were signed. The requirements of the "blue sky law," so-called (3 Comp. Laws 1915, § 11945 *et seq.*), were not complied with. Notwithstanding this fact treasury stock of the company was sold by both Lincoln and defendant. It also appears that 50 shares of defendant's stock was sold by him to one Clemens and the money turned over to Lincoln and that 50 shares of his stock was turned back into the treasury. The record does not make this transaction as clear as it might have been made.

While the record, we think, discloses that these parties supposed the attorney had taken all the steps necessary to entitle them to sell the stock, such sales of treasury stock were in violation of the law. But such sales of treasury stock are not the sales here involved. Although defendant participated in such unlawful sales he is not liable in this action unless the transaction out of which this case arose was an unlawful sale.

It seems to be the claim of the plaintiffs that defendant's salary made the overhead expenses heavy and it is to be inferred that the business had not been as successful as all parties anticipated. The plaintiffs and defendant entered into an agreement on December 31, 1918, by the terms of which defendant agreed to sell his stock to plaintiffs and also bound himself not to engage in the manufacture, sale or handling of humidifiers for domestic or commercial purposes for a period of three years. The consideration of this agreement was the sum of $1,500, $500 paid down and four notes of $250 each signed by the plaintiffs. Defendant had placed some of his stock in the names of members of his family, but it is undisputed that it was still his stock, and it was so treated by all the parties including these plaintiffs; they paid him the $500 and executed four notes payable to him for the sum of $250 each, paid one of them to him and allowed judgment to pass against them in his favor upon two others. When defendant sold this stock and entered into the agreement not to engage in the business for three years he sold his own stock; he was acting for himself and not as agent or broker for the members of his family.

After the decision of this court in *Edward* v. *Ioor*, 205 Mich. 617, was handed down, plaintiffs filed this bill asking that defendant be required to account to them for the money already paid him for the stock and his agreement not to engage in the business, to restrain enforcement of the judgments on the two notes, and to require the giving up and cancellation of the remaining note for $250. The position of plaintiff's counsel appears from the following colloquy:

"*The Court:* Well, I understand, Mr. Sims, to be brief about it—
"*Mr. Sims:* Yes.
"*The Court:* That your chief contention is that Ben-

edict had no right to sell his individual stock to these plaintiffs and take back in payment therefor these notes which he has sued upon?

"*Mr. Sims:* Yes.

"*The Court:* And that he was a dealer in stocks under the 'blue sky law,' so-called, and that he should have received authority from the securities commission to sell his own stock?

"*Mr. Sims:* Yes, but he didn't.

"*The Court:* I say 'that he should have had.'

"*Mr. Sims:* Yes.

"*The Court:* All right, that is the meat in the cocoanut.

"*Mr. Sims:* That is the meat in the cocoanut, your honor. I want to get at that. I want to show that in this record. It is material; the whole surrounding circumstance of this entire transaction will then become material as bearing upon the question of whether or not this man is one that should be termed a 'dealer' or whether he is one who makes an isolated sale, a singular transaction, which, under the 'blue sky law' he is empowered to do. It is a question of whether a person selling his own stock and not making repeated sales comes under the statute and I am seeking to determine an isolated sale under this 'blue sky statute.'"

—and it is here insisted that in the sale by defendant of his own stock he was a dealer, and not having been licensed as such the sale was in violation of the statute, therefore void, and plaintiffs are entitled to recover what they have paid on such void contract and to have their obligations cancelled.

We have already pointed out that defendant in this transaction sold only his own stock, and that the fact that some of it stood in the names of members of his family did not change that fact. The isolated sale to Clemens, the proceeds of which went to plaintiff Lincoln, bore no resemblance to the present transaction. Very clearly the transaction here involved was not a sale made in the course of continued and successive transactions of a similar nature. The act itself in

section 10 (3 Comp. Laws 1915, § 11954) defines the term "dealer" and provides:

"The term 'dealer' shall not include an owner, not issuer, of such securities so owned by him when such sale is not made in the course of continued and successive transactions of a similar nature."

In the case of *Edward* v. *Ioor, supra,* after quoting this provision of the statute we said:

"This provision was thought important by the framers of this act to remove the question of unconstitutional taint, and preserve the constitutional right of the individual to sell his own stock, but by prohibiting 'continued and successive transactions of a similar nature' prevent the abuse of that right and its exercise in a manner contrary to the spirit of the act. Mr. Ioor had the right to sell this stock to plaintiff. He did not by continued and successive transactions of a similar nature become a dealer. He was acting within his constitutional rights and by this sale to plaintiff did not violate the act. No liability can be predicated on this transaction."

In that case we definitely held the defendants liable upon such sales as were in violation of the act in question, and as definitely held that the sale by an owner of his own stock when not in the course of continued and successive transactions of a similar nature was not in violation of the statute. That case must control the instant one. The trial judge found that the sale by the defendant of his own stock to these plaintiffs, not being in the course of continued and successive transactions of a similar nature, did not offend the act in question and was not void. He therefore dismissed the plaintiffs' bill. We agree fully with him and affirm the decree. Defendant will have his costs in this court.

MOORE, C. J., and STEERE, BROOKE, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.