Allen, J.
 

 The legal questions in this case arise out of the following facts:
 

 Upon the 14th day of April, 1922, certain persons made the proper application for articles of incorporation for the Warren People’s Market Company. Upon the 19th day of April, 1922, articles of incorporation were issued to the incorporators by the secretary of state. Upon April 23, 1922, Corbett
 
 &
 
 Grarghill, of Warren, doing business as Corbett & ■ Sons, subscribed for six shares of the preferred capital stock of the Warren People’s Market Company. Upon May 29, 1922, a certificate of subscription was filed with the secretary of state by the incorporators, showing subscription
 
 *129
 
 of 10 per cent, of the capital stock, and thereafter the corporation was duly organized by the election of directors, who, in turn, elected their officers in the regular way.
 

 As shown by the record, no commission, cost, or expense of any kind whatever was incurred by the Warren People’s Market Company in the sale of the stock in question, whieh sale was made for the sole account of the Warren People’s Market Company, to be issued by such company at the full par value thereof. The record also shows that no part of such stock so subscribed, common or preferred, was issued or proposed to be issued, either directly or indirectly, in payment for patents, services, good will, or for property not located in the state of Ohio.
 

 Now the Warren People’s Market Company was entitled, under the Blue Sky Law, to file with the securities division .of the Ohio state banking department a written statement setting forth the existence of these facts (Section 6373-2 [f], General Code), and to secure a certificate of exemption from the department upon the ground that, under the Blue Sky Law, the company was not required to take out a license with the department before disposing of, or offering to dispose of, such stock. However, the market company neither filed such a written statement with the securities division of the state banking department nor took out a license with the department for disposal of the stock.
 

 The defendant in error refused to pay for its subscription, and grounded its defense to the instant action upon two propositions: One, that the
 
 *130
 
 partnership of Corbett & Sons, which was served with summons, did not do business in Warren, Ohio, and never had subscribed for the stock in question; the other, that the stock subscription was invalid under the facts stated, since the plaintiff in error had not secured a certificate of exemption under the Blue Sky Law.
 

 Taking up these propositions in inverse order, we shall consider the sections of the Blue Sky Law under which the question of the validity of the stock subscription must be determined. They are as follows:
 

 Section 6373-1, General Code:
 

 “Except as otherwise provided in this act no dealer shall, within this state, dispose or offer to dispose of any stock, * * * issued or executed by any private or
 
 quasi
 
 public corporation,
 
 * * *
 
 without first being licensed so to do as hereinafter provided.”
 

 Paragraph or subdivision 3 of Section 6373-2, General Code, defines a dealer as follows:
 

 “The term ‘dealer,’ as used in this act, shall be deemed to include any person or company, except national banks, disposing, or offering to dispose, of any such security, through agents or otherwise, and any company engaged in the marketing or flotation of its own securities either directly or through agents or underwriters or any stock promotion scheme whatsoever, except * *
 

 There are five exceptions under this definition, designated by the letters (a) to (f), inclusive. Exception (f) is as follows:
 

 “The issuer, organized under the laws of this state where the disposal in good faith and not for
 
 *131
 
 the purpose of avoiding the provisions of this act is made for the sole account of the issuer, without any commission and at a total expense of not more than two percentum of the proceeds realized therefrom plus five hundred dollars and where no part of the issue to be disposed of is issued, directly or indirectly, in payment for patents, services, good will, or for property not located in this state; provided that the president and secretary, or the incorporators if done before organization, of the issuer shall, prior to such disposal, file with the ‘commissioner’ a written statement setting forth the existence of all such facts and that such issuer is formed for the purpose of doing business within this state.”
 

 Section 6373-20, General Code, imposes a fine of not less than $100, nor more than $5,000, or imprisonment in the penitentiary, or both, upon any one who knowingly makes a false statement upon any matter of information required by the act to be filed with the commissioner; such false statement being made to aid in the disposal of securities. The same section also imposes a penalty for violating the other provisions of the act.
 

 The Court of Appeals based its ruling upon the proposition that, as the Blue Sky Law is a penal act, any sale or contract of sale of stock by a person or company that fails to comply with the provisions of the law is absolutely void. It is to be noted that neither the corporation nor its officers could have been prosecuted under the first provision of Section 6373-20, above quoted, for no false statement was made by the company,
 
 *132
 
 nor by any of its officers, and all of tbe facts set forth in the record entitle the plaintiff in error to come within the exception to the definition of “dealer” embodied in subdivision (f) of Section 6373-2. Therefore the failure to file the statement with the commissioner, setting forth the existence of these facts, could not subject the corporation or its officers to punishment under the first part of Section 6373-20. However, the corporation and its officers could have been penalized under the blanket provision in the same section which imposes a penalty for violating “the other provisions” of the act. Since the corporation was “not a dealer” within the exception of Section 6373-2, it was not bound by the provisions of the law as to dealers, and was only required to furnish the statement of exemption demanded under exception (f). Its failure to do this is the action penalized by the statute.
 

 The defendant in error claims, and the Court of Appeals held, that the sale of stock was invalid, because the violation of any of the provisions of the act was forbidden under penalty, and hence the sale itself without the statement being filed was prohibited. And as a general proposition a penalty does imply a prohibition. However, this rule has been somewhat modified in the state of Ohio, where it has been held that to determine whether a contract made contrary to a penal statute is illegal and void the statute must be considered as a whole to ascertain whether or not it was the intention of the Legislature that the statute should have such effect.
 
 Vining
 
 v.
 
 Bricker,
 
 14 Ohio St., 331;
 
 Tod
 
 v.
 
 Wick Brothers & Co.,
 
 36
 
 *133
 
 Ohio St., 370. It is true that in the
 
 Vining case
 
 the statute contained a proviso which makes that holding not specially applicable to the facts herein set forth; and the decision in
 
 Tod
 
 v.
 
 Wick Brothers
 
 is closer in point. In that case the statute in question provided, in substance, that every promissory note, the consideration of which either in whole or in part consisted of the right to make, use, or vend any patent invention, should have the words written or printed legibly thereon, “Given for a patent right.” The second section of the act provided that any person who should take, purchase, sell or transfer any such notes, not having the words “Given for a patent right” written or printed legibly and prominently upon the face thereof, knowing that the consideration, in whole or in part, of such note, was the right to make, use or vend a patent invention, should be deemed guilty of misdemeanor, and upon conviction thereof be fined in any sum not exceeding $500, or imprisoned in the county jail 40 days, or both, at the discretion of the court. 66 Ohio Laws, 93. The defendant set up that as the note had not been made in conformity with the statute, for the failure of which a penalty was imposed, the note was void. However, the court held that it was a question of legislative intent whether the Legislature had meant to render any act done in violation of this statute void, and decided, after scrutinizing the statute, that it was not the intent of the Legislature in this particular, enactment to render void notes issued in violation of its terms. Also there is considerable authority sustaining this viewpoint in other jurisdictions besides our own.
 

 
 *134
 
 In
 
 Niemeyer
 
 v.
 
 Wright,
 
 75 Va., 239, 40 Am. Rep., 720, the court said:
 

 “A statute, containing a prohibition and a penalty, makes the act which it punishes unlawful, and the same may be implied from a penalty without a prohibition. But it does not follow that the unlawfulness of the act was meant by the Legislature to avoid a contract made in contravention of it. When the statute is silent, and contains nothing from which the contrary can be properly inferred, a contract in contravention of it is void.
 

 “
 
 Conceding the general rule as above stated the mere imposition of a penalty by a statute for doing or omitting to do an act does not of itself, in every case, necessarily imply an intention of the Legislature that every such contract in contravention of the statute shall be void, in the sense that it is not to be enforced in a court of justice.”
 

 The following cases hold substantially as in the above case, and uphold similar contracts, applying the principle above:
 
 Harris
 
 v.
 
 Runnels,
 
 53 U. S., (12 How.), 79, 13 L. Ed., 901;
 
 Brooklyn Life Ins. Co.
 
 v.
 
 Bledsoe,
 
 52 Ala., 538;
 
 Johnson
 
 v.
 
 Hudson,
 
 11 East., 180, 103 Eng. Rep. R., 973;
 
 Parton
 
 v.
 
 Hervey,
 
 67 Mass., (1 Gray), 119;
 
 Bly
 
 v.
 
 Second Nat. Bank of Titusville,
 
 79 Pa., 453;
 
 Pangborn
 
 v.
 
 Westlake,
 
 36 Iowa, 546;
 
 Bemis
 
 v.
 
 Becker,
 
 1 Kan., 226;
 
 Lindsey
 
 v.
 
 Rutherford,
 
 56 Ky., (17 B. Mon.), 245;
 
 Watrous & Snouffer
 
 v.
 
 Blair,
 
 32 Iowa, 58;
 
 O’Hare
 
 v.
 
 Second Nat. Bank of Titusville,
 
 77 Pa., 96;
 
 Wackier
 
 v.
 
 Ford,
 
 65 U. S., (24 How.), 322, 16 L. Ed., 690;
 
 Mandelbaum
 
 v.
 
 Gregovich,
 
 17 Nev.,
 
 *135
 
 87, 28 P., 121, 45 Am. Rep., 433;
 
 Larned
 
 v.
 
 Andrews,
 
 106 Mass., 435, 8 Am. Rep., 346;
 
 Bowditch
 
 v.
 
 New England Mutual Life Ins. Co.,
 
 141 Mass., 292, 4 N. E., 798, 55 Am. Rep., 474;
 
 Edison General Electric Co.
 
 v.
 
 Canadian Pac. Navigation Co.,
 
 8 Wash., 370, 36 P., 260, 24 L. R. A., 315, 40 Am. St. Rep., 910;
 
 Pacific Trust Co. v. Dorsey,
 
 72 Cal., 55, 12 P., 49;
 
 Union Nat. Bank of St. Louis v. Matthews,
 
 98 U. S., 621, 25 L. Ed., 188;
 
 Toledo Tie & Lumber Co.
 
 v.
 
 Thomas,
 
 33 W. Va., 566, 11 S. E., 37, 25 Am. St. Rep., 925;
 
 Dillon & Palmer
 
 v.
 
 Allen,
 
 46 Iowa, 299, 26 Am. Rep., 145.
 

 In
 
 Harris
 
 v.
 
 Runnels, supra,
 
 the court held “where a defendant, when sued upon a note, set up, as a defense, that the note was given for an illegal consideration, the whole statute must be examined in order to discover whether or not the Legislature intended to prevent courts of justice from enforcing contracts relating to the act prohibited.”
 

 In re T. H. Bunch Co.
 
 (D. C.), 180 F., 519, the court held:
 

 “When a statute imposes specific penalties for its violation, where the act is not
 
 malum in se,
 
 and the purpose of the statute can be accomplished without declaring contracts in violation thereof illegal, the inference is that it was not the intention of the lawmakers to render such contracts illegal and unenforceable, and the court must examine the entire statute to discover whether the Legislature intended to prevent courts from enforcing contracts based on the act prohibited, and, unless it does so appear, only the penalties imposed by the statute can be enforced.”
 

 
 *136
 
 In
 
 Bowditch
 
 v.
 
 New England Mutual Life Ins. Co.,
 
 141 Mass., 292, 293, 4 N. E., 798, 800 (55 Ana. Rep., 474), the court in its opinion says: “The statute provides that ‘no member of a committee or officer of a domestic insurance company, who is charged with the duty of investing its funds, shall borrow the same * *'
 

 “It is a rule universally accepted that, if a statute prohibits a contract in the sense of making it unlawful for any one to enter into it, such a contract, if made, is wholly void, and cannot be enforced. But it is often a difficult question to determine whether a statute forbidding an act to be done, or enjoining the mode of doing it, is prohibitory, so as to make any contract in violation of it absolutely void, or whether it is directory in its purpose, and does not necessarily invalidate the contract. * *
 
 *
 
 The decisions recognize a clear distinction between these two classes of cases. * * * There are numerous cases where statutes forbid certain acts to be done, and in a sense forbid certain contracts to be made, and yet it is held that contracts made in contravention of the statutes are not void.”
 

 In
 
 Walter A. Wood Mowing S Reaping Machine Co.
 
 v.
 
 Caldwell,
 
 54 Ind., 270, 23 Am. Rep., 641, the agent of a foreign corporation, which manufactured for sale an article not covered by letters patent, made a contract for- the sale of such article in Indiana without having first complied with the requirements of Sections 1 and 2 of “an act respecting foreign corporations and their agents in this state” (1 Rev. St. Ind., 1876, p. 373), which
 
 *137
 
 provided that the agents of the corporation shall deposit in the circuit court clerk’s office, where they propose doing business, the authority under which they act as agents, and before doing business; and that any agent refusing to comply with the act shall be subject to fine on presentment or indictment. The court held that the act did not make the contract void, but prohibited its enforcement only until the requirements of the statute had been complied with.
 

 In the opinion, at page 276, the court said, speaking of the rule that a penalty implies a prohibition, and quoting Frazer, J., in
 
 Deming
 
 v.
 
 State ex rel. Miller,
 
 23 Ind., 416:
 

 “It is a grave error to regard it as a merely arbitrary rule, applicable to all contracts which are prohibited by statute. It is generally applicable because the thing prohibited is usually immoral, or against public policy.”
 

 In the same opinion, at page 277, the court quotes from
 
 Ætna Ins. Co.
 
 v.
 
 Harvey,
 
 11 Wis., 394, as follows:
 

 “We were referred to the cases of
 
 Columbus Insurance Co.
 
 v.
 
 Walsh,
 
 18 Mo., 229, and
 
 Clark
 
 v.
 
 Middletown,
 
 19 Id., 53, in which the Supreme Court of that state held that the neglect of the agent of foreign insurance companies to take out a license as required by their law, did not invalidate contracts of insurance made by him. It will be observed, on examining their statute, that it contains no express prohibition against the transaction of business without such license. * * *
 
 *138
 
 The court says the act imposes a penalty on the agent, but does not make the contract void.”
 

 To the same effect are
 
 Brooklyn Life Ins. Co.
 
 v.
 
 Bledsoe,
 
 52 Ala., 538, 551;
 
 Edison General Electric Co.
 
 v.
 
 Canadian Pac. Navigation Co.,
 
 8 Wash., 370, 36 P., 260, 24 L. R. A., 315, 40 Am. St. Rep., 910;
 
 Larned
 
 v.
 
 Andrews,
 
 106 Mass., 435, 8 Am. Rep., 346.
 

 The test by which it is to be decided whether the act upon which a penalty is imposed is also absolutely prohibited, as indicated in the decisions quoted, is whether the act prohibited is detrimental to the welfare or morals of the public, or whether the prohibition is.for the purpose either of raising revenue or simply regulating trade or business. Under this test a number of cases hold that sales which are made without the vendor’s obtaining the necessary permit are valid.
 
 Dursum
 
 v.
 
 Benedict,
 
 209 Mich., 115, 176 N. W., 459.
 

 In
 
 Larned
 
 v.
 
 Andrews, supra,
 
 it was held that the internal revenue laws, prohibiting any persons from carrying "on the business of wholesale dealers in merchandise until they should have paid the special tax therein required, did not invalidate sales made by persons who had failed to comply with the statute, nor prevent them from recovering the price of the goods sold.
 

 An important case upon this quotation is
 
 Smith
 
 v.
 
 Mawhood,
 
 14 M. & W., 452, 153 Eng. Rep. R., 552. In that case also the validity of a sale was questioned. The sale was held not unlawful, although the statute provided that, if any person should carry on any trade or business thereinafter
 
 *139
 
 mentioned, without taking out a license, he should forfeit certain penalties. The sale in question was made by a person who had failed to take out the license required.
 

 Baron Parke said:
 

 “I think the object of the Legislature was not to prohibit a contract of sale by dealers who have not taken out a license. * * * But * * * its object was not to vitiate the contract itself, but only to impose a penalty on the party offending, for the purpose of the revenue.”
 

 There is, it is true, considerable conflict in the cases upon the question whether under the test given above sales made in violation of the terms of the Blue Sky Law are void. In Michigan such sales are held to be absolutely invalid. In Texas and Idaho they are held to be valid. Thus, in the case of
 
 Vermont Loan & Trust Co.
 
 v.
 
 Hoffman,
 
 5 Idaho, 376, 49 P., 314, 37 L. R. A., 509, 95 Am. St. Rep., 186, the defense to an action upon a note was that the note was void because it had been given in a transaction consummated in violation of the statute. The court says upon this point, at page 382:
 

 “The first question that arises is this: Was the transaction void, or is the plaintiff precluded from recovering on said contract by reason of its failure to procure a license to do the business of loaning money? Section 1636, Rev. Stat., provides: ‘A license must be procured immediately before the commencement of any business or occupation liable to a license tax from the tax collector of the county where the applicant desires
 
 *140
 
 to transact the same, which license authorizes the party obtaining the same in his town, city, or particular locality in the - county to transact the business described in such license.’ Section 1644, Rev. Stat., requires ‘persons, associations, or corporations engaged in the occupation of banking, loaning money at interest,’ etc., to pay a license tax, the amount of such tax varying according to the classification enumerated in said section. Section 6983, Rev. Stat., is in the following language, to wit: ‘Every person who commences or carries on any business, trade, or profession or calling for the transaction or carrying on of which a license is required by any law of this territory (state), without taking out or procuring the license prescribed by such law, is guilty of a misdemeanor.’ The appellants contend that under the statutes,
 
 supra,
 
 the consideration for the notes and mortgage in question was illegal; that the respondent was prohibited from doing such business; that the contract of the parties was made in violation of law, and therefore void; that owing to the illegality of ,the consideration of said contract, the same having been made in violation of law, the court could grant no relief to the respondent. Counsel for appellants has spent much time in research, and has cited many authorities in support of his position. The general rule, as urged by appellants, that a contract founded on an act forbidden by a statute under a penalty is void, although it be not expressly declared to be so, is correct and well established by authority. But in applying the rule many courts
 
 *141
 
 have excepted from its operation one class of cases, viz., when the statutory prohibition is found in a statute enacted for the purpose of raising revenue or the regulation of traffic or business,' when, unless it is manifestly the intention ' of the statute to make the contract void, the court will treat the contract as valid. Mr. Sutherland, in his admirable work on Statutory Construction, at section 366, in treating the question under consideration, .very aptly says: ‘When a statute is for revenue purposes, or is a regulation of a traffic or business, and not to prohibit it altogether, whether a contract which violates the statute shall be treated as wholly void will depend on the intention expressed in the particular statute. Unless the contrary intention is manifest,the contract will be valid.’ ”
 

 To the same effect is the case of
 
 Smoot
 
 v.
 
 Perkins,
 
 (Tex. Civ. App.), 195 S. W., 988, 40 Am. Bankr. Rep., 193, and we think this reasoning sound.
 

 The case of
 
 Groby
 
 v.
 
 State,
 
 109 Ohio St., 543, 143 N. E., 126, is not in point upon this proposition, because Groby in that case was actually indicted under the penal provision of the Code, and no-question was made as to the legality of the sale of the stock.
 

 Proceeding to consider whether the Legislature intended in the enactment herein discussed to render void sales consummated under the circumstances herein set forth, we find that the expressed purpose of the law, as shown both in the original enactment, 103 Ohio Laws, 743, and
 
 *142
 
 in the amendment, 104 Ohio Laws, 110, is not to make such sales void, but to “regulate the sale of bonds, stocks and other securities and of real estate not located in Ohio and to prevent fraud in such sales.”
 

 Section 6373-1, General Code, which strikes the keynote of the statute, reads, in its pertinent parts:
 

 “Except as otherwise provided in this act, no dealer shall, within this state, dispose or offer to dispose of any stock, stock certificates, bonds * * * without first being licensed so to do as hereinafter provided.”
 

 This section expressly recognizes the validity of stock transfers and indicates the intention of the Legislature not to prohibit the sale of securities, but to regulate that sale so as to protect the public from loss. The sale of stock does not of itself constitute
 
 malum prohibitum.
 
 There is nothing in the present transaction, nor in the usual stock sale, which
 
 per se
 
 endangers the public safety or public morals. Also the statute nowhere states that sales made by persons who have not complied with the statute shall be null and void. Hence it is evident that the purpose of the Blue Sky Law, viewed as a whole, was not to prohibit transactions in securities, but to throw safeguards around those transactions; and, therefore, the defense based upon the illegality of the note sued upon is untenable.
 

 Upon another point, however, we agree with the defendant in error. The record shows in this case that a partnership, Corbett & Sons, of the city of Warren, Ohio, signed the note. This partnership consists of William M. Corbett, Wil
 
 *143
 
 liam M. Corbett, Jr., and J. E. Garghill. Another partnership, distinct and separate, called Corbett & Sons, having several of its members different from those composing the Warren partnership, exists in Akron. Service was made in this case, not upon any member of the Warren partnership, but upon Charles Corbett, a member of the Akron partnership. The Warren partnership never answered or otherwise appeared in the ease. Charles Corbett is not a member of the Warren partnership. Where suit is brought against a partnership consisting of several individuals, none of whom is served in the action, appearance not otherwise having been made, it is reversible error to hold the partnership not served liable for the debt.
 

 For the above reason, the judgment of the Court of Appeals must be affirmed.
 

 Judgment affirmed.
 

 Marshall, C. J., Jones, Matthias, Day, Kinkade and Robinson, JJ., concur.