HARRY M. SHERIDAN, Appellant, *v.* FRED L. WEBER and JOSEPH T. WILSON, Respondents.

Fourth Department, November 5, 1937.

*Henry B. Harrington,* for the appellant.

*John S. Knibloe,* for the respondent Wilson.

*J. Carl Fogle,* for the respondent Weber.

EDGCOMB, J. Plaintiff, a stock salesman, brings this action to recover commissions claimed to have been earned by him in the sale of the capital stock of the Genesee Corporation. The court directed a verdict for the defendants, upon the sole ground that the plaintiff was engaged in selling securities which " were forbidden by law to be sold at that time."

There is ample evidence to sustain a finding that the defendants employed the plaintiff to sell the stock of the Genesee Corporation, which they were about to incorporate, and that they agreed to pay him a commission of twenty-five per cent on all such sales, and that he sold stock in the aggregate amount of $4,600. Our task is to determine whether the evidence warrants the court in holding as matter of law that such sales were illegal, and, if so, whether such illegality bars the plaintiff from recovering the amount to which he would otherwise be entitled.

In an effort to stop certain fraudulent practices in the sale of stocks, bonds and other securities, which had grown to such dimensions that some relief was imperative, the Legislature, by chapter 649 of the Laws of 1921, added article 23-A, known as the Martin Act, to the General Business Law as its contribution to the solution of the problem. Among the provisions of this act, and the one upon which the trial court relied in directing a verdict for the defendants, may be found the requirement, contained in section 359-e, that " no dealer shall sell or offer for sale to the public * * * as principal, broker or agent, any securities issued or to be issued unless and until a notice, * * * containing the name, business or post office address of such dealer and if such dealer is a corporation the State or country of incorporation thereof, and if a partnership the name of the partners, shall have been filed in the Department of State."

Concededly the plaintiff never filed such a notice. Such failure, however, does not, in our opinion, necessarily deprive him of the right to recover the commissions to which he would otherwise be entitled. The word " dealer " is defined by the statute (§ 359-e); it includes

" every person, partnership, corporation, company, trust, or association except a domestic municipal corporation who engages directly or through an agent in the business of trading in securities in such manner that as part of such business any of such securities are sold or offered for sale to the public in this State; or who deals in futures or market quotations of prices or values of any securities or accepts margins on prices or values of said securities." It excludes every one else. *Expressio unius est exclusio alterius.* It will be noted that the definition itself contemplates that a dealer may act through an agent. In such a case the principal, rather than the agent, would be the dealer, and the requirement of the statute would not apply to the latter.

It is quite apparent that the Legislature never intended that the various employees of a large brokerage house trading in securities should be compelled to personally file the notice specified in the Martin Act before they could act for their principal, if such a notice had been filed by their employer.

The defendant Wilson testified that, inasmuch as the plaintiff did not wish to qualify himself as a dealer within the act, he, Wilson, on June 17, 1936, filed with the Secretary of State, under the assumed name of Genesee Company, the necessary statement to entitle him to deal in the securities of the Genesee Corporation. The jury could well have found that, after the filing of such statement, Wilson was the dealer, and that the plaintiff was selling the stock as his agent or representative. True, one block of stock was sold by the plaintiff on June fifteenth, two days before the required notice was filed, but there is ample evidence from which the jury could say that the defendants assured the plaintiff before any sale was made that all the preliminary steps necessary to enable the stock to be sold had been taken, and that the plaintiff relied upon such representation.

But even if it were assumed that the Martin Act was applicable to the appellant at the time he made these various sales of stock, his failure to file the notice specified in the statute does not make the contract between the plaintiff and the defendants void.

The public is not involved in this controversy. We are dealing here with an agreement whereby two individuals, who, for their own personal advantage, desire to secure the services of another, and who agree to pay the latter a stipulated sum for his labor. The notice in question has no possible relation to such a transaction. Parties of full age and sound mind can protect themselves without the aid of the statute, when it comes to a purely personal transaction between themselves. The act was never designed to regulate contracts between a principal and his agent; its object

was to protect the public from stock frauds and swindlers. The purpose of the law, to borrow the words of Judge POUND in *People* v. *Federated Radio Corporation* (244 N. Y. at p. 38), " is to prevent all kinds of fraud in connection with the sale of securities and commodities and to defeat all unsubstantial and visionary schemes in relation thereto whereby the public is fraudulently exploited."

The parties to the agreement were fully competent to take care of their own interests, and to enter into a contract. It is not claimed that the compact between them was induced by fraud or duress, or that there was a failure of consideration. Defendants accepted the benefits of plaintiff's services; the money received from the sale of the stock, with the exception of $250, which was retained by the plaintiff to apply on account, was paid over to the respondents. True, defendants were compelled by the Attorney-General, after an investigation, to return this money to the purchasers of the securities, but that was not the plaintiff's fault. Defendants should not be permitted to evade their contract obligations upon the theory that the plaintiff had no right to sell this stock, which defendants were urging and assisting him to sell, simply because he failed to file the notice required by the statute, or because he sold some of the stock before Wilson filed such a notice. By what fair rule shall the stigma be fastened on the plaintiff, and the defendants be permitted to escape censure? Such an objection sounds ill coming from one who has benefited by plaintiff's labor.

Nowhere does the Martin Act make a sale of securities void or unenforcible, if the notice required by section 359-e has not been filed. The only penalty provided for the non-observance of any of the provisions of the act is to make the violator guilty of a misdemeanor, punishable by a fine of not more than $500, or imprisonment for not more than one year, or both. (§ 359-g, subd. 2.) The statute does not even prohibit fraudulent practices; it merely provides a procedure to prevent them. (*People* v. *Federated Radio Corp.*, 244 N. Y. 33, 38.)

There being nothing in the act which makes a sale of stock, or a contract to induce such sale, void because of the failure to file the specified notice, we should not read into the law something which is not there, in order to reach a transaction between the plaintiff and defendants, which otherwise would be perfectly valid.

In *Sajor* v. *Ampol, Inc.* (275 N. Y. 125), the purchaser of stock was not permitted to escape the binding effect of his contract of purchase upon the ground that the dealer, who sold him the security, had failed to file with the Secretary of State the notice required by section 359-e of the General Business Law.

We find a like holding by the Supreme Court of Ohio, under a somewhat similar statute, in *Warren People's Market Co.* v. *Corbett & Sons* (114 Ohio St. 126; 151 N. E. 51).

If the purchaser of a security could not avoid his agreement because some statutory provision intended for his protection was not complied with, how could an employer hope to escape his contract obligation to his employee upon the theory that the latter proceeded without first conforming to the mandate of the statute, especially when the employer was fully cognizant of the dereliction of his agent, and when, in spite of such knowledge, he accepted the fruits of his employee's labor?

Counsel for the respondent Weber suggests in his brief that the Genesee Corporation had no assets whatever, and that the plaintiff was engaged in a scheme to sell a worthless security to the public, and thus defraud his customers; that he should not be allowed, therefore, to receive compensation for any services which tended to bring about that result. It must be borne in mind that we are not dealing here with the respective rights of the plaintiff and some purchaser, to whom he sold a block of this stock, but rather with the rights of an employer and his employee. Plaintiff was not a stockholder, officer or director of the corporation; he had nothing to do with the property which the corporation owned or did not own. Defendants put this stock on the market; they offered it for sale to the public, and they employed and assisted the plaintiff in selling it. If the stock was worthless, they, and not the plaintiff, were responsible for the situation. They knew whether there was any substance to the corporation, the stock of which they were offering for sale through an agent of their own selection. If the plaintiff, by the sale of this stock, was putting a fraud over on the public, he was acting for the defendants, and at their instigation, and for their benefit and profit. To permit the defendants, under such circumstances, to reap the benefit of plaintiff's services, and then seize upon a situation, which they were entirely responsible for, to avoid their otherwise valid and legal obligation, would put a premium on wrongdoing and permit the defendants to profit by their own fraud. The law will not countenance such a contention.

It is very true that an agreement will be held void and unenforcible where the object of the parties is to perpetrate a fraud upon a third party, or upon the public generally. The policy of the State is to put an end to the sale of worthless securities. If the corporation in question had no assets, and if its stock was valueless, and the plaintiff knew that fact, and conspired with the defendants to dispose of a worthless security to innocent and unsuspecting purchasers, and thus overreach and cheat them, he

would, undoubtedly, be equally guilty with the defendants. The law will not sanction dishonest practices by enabling an individual to acquire, by means of his own wrongdoing, a legal right, or a cause of action. Where parties are equally guilty of illegal practices, the law will leave them where it finds them, and refuse its aid to either to recover from the other at the price of his rascality. (*Maierne* v. *Horwitz*, 101 N. Y. 469; *Goodrich* v. *Houghton*, 134 id. 115; *Reiner* v. *North American Newspaper Alliance*, 259 id. 250, 261; *Coffey* v. *Burke*, 132 App. Div. 128; *Barry* v. *Mulhall*, 162 id. 749; *Sprague* v. *Webb*, 168 id. 292, 299.)

The presumption is in favor of the legality of a contract, rather than its illegality. We cannot brand the stock which the plaintiff sold as entirely worthless simply because the Attorney-General stopped its sale, or because it was a security which a careful and conservative purchaser would hesitate to purchase. We cannot say as matter of law that the stock had no value, or that the plaintiff was not acting in good faith, and in the honest belief that the purchaser was receiving fair compensation for his money. There is evidence that the defendants assured the plaintiff, before he sold any stock, that the incorporation of the defendants had been completed, and all fees and taxes had been paid, and all requisite notices had been filed, and that it was " all right to start out to sell stock." The jury might well say that he had a right to rely upon this assurance.

We feel that it was error to hold that the contract in suit could not be enforced because the plaintiff was forbidden by law to sell the securities in question. That being so, the judgment appealed from must be reversed on the law and facts and a new trial must be had, with costs to the appellant to abide the event.

All concur. Present — SEARS, P. J., EDGCOMB, CROSBY, LEWIS and TAYLOR, JJ.

Judgment reversed on the law and facts and a new trial granted, with costs to the appellant to abide the event.