[Cite as *Bilbrey-Jergens J.V., L.L.C. v. Lamanna's Lawn & Landscaping*, 2014-Ohio-2090.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

BILBREY-JERGENS J.V., LLC : 

    Plaintiff-Appellant :       C.A. CASE NO.   25981

v. :       T.C. NO.   12CV5675

LAMANNA'S LAWN & LANDSCAPING :      (Civil appeal from
                                   Common Pleas Court)

    Defendant-Appellee : 

                        :

. . . . . . . . . .

**O P I N I O N**

Rendered on the    16th    day of    May   , 2014.

. . . . . . . . . .

RICHARD L. CARR, Atty. Reg. No. 0003180, 110 N. Main Street, Suite 1000, Dayton, Ohio 45402
      Attorney for Plaintiff-Appellant

MARTINA M. DILLON, Atty. Reg. No. 0066942 and J. JOSEPH WALSH, Atty. Reg. No. 0003545, 201 E. Sixth Street, Dayton, Ohio 45402
      Attorneys for Defendant-Appellee

. . . . . . . . . .

FROELICH, P.J.

      **{¶ 1}** Bilbrey-Jergens J.V., LLC appeals from a judgment of the

Montgomery County Court of Common Pleas, which granted judgment to Lamanna's Lawn & Landscaping ("Lamanna") in the amount of $37,720.52, plus costs. Bilbrey-Jergens claims that the trial court erred in confirming an arbitration award in Lamanna's favor. For the following reasons, the trial court's judgment will be affirmed.

## I. Factual and Procedural History

{¶ 2}     In March 2010, Bilbrey-Jergens entered into a subcontract agreement with Lamanna whereby Lamanna, the subcontractor, would provide landscaping, irrigation, paver installation and other work in connection with Five Rivers MetroPark's Riverscape MetroParks Phase III – Bike Hub and Plaza project. As part of the agreement, Lamanna agreed to comply with "all federal, state and local laws, ordinances and regulations (the Laws) applicable to the Subcontract Work." The contract included a dispute resolution section, which set forth three progressive steps to resolve disputes between the parties: direct discussions, mediation, and binding arbitration.

{¶ 3}     According to Bilbrey-Jergens's complaint, midway through the project, the construction manager ordered Lamanna off the project and Bilbrey-Jergens complied with that directive. Thereafter, a dispute arose between Bilbrey-Jergens and Lamanna as to whether Lamanna was entitled to additional compensation for work and materials that it had furnished and whether Bilbrey-Jergens was entitled to damages for breach of contract by Lamanna.

{¶ 4}     The matter eventually proceeded to arbitration, pursuant to the subcontract agreement. In June 2012, the parties signed a "Stipulation Regarding Arbitration," establishing how arbitration would be conducted. The arbitrator subsequently held a

two-day hearing, inspected the job location, and reviewed documentary evidence and post-arbitration briefs from the parties. On July 19, 2012, the arbitrator awarded $37,720.52 for material costs to Lamanna. The arbitrator further determined that Bilbrey-Jergens was not entitled to any damages, finding that "the very poor manner in which [a Bilbrey-Jergens employee] ran the project was the cause of any damages suffered by Bilbrey-Jergens." As part of his conclusions and reasoning, the arbitrator found that the contract between Bilbrey-Jergens and Lamanna was "valid and executed."

{¶ 5} On August 7, 2012, Bilbrey-Jergens filed a complaint in the common pleas court, alleging that the arbitration award was "in violation of law" because Lamanna was not a properly licensed nursery stock dealer under R.C. 927.51 and R.C. 927.53; a violation of the nursery stock statute is a third-degree misdemeanor for a first offense and a second-degree misdemeanor for subsequent offenses. R.C. 927.72; R.C. 927.99. Bilbrey-Jergens sought (1) a declaratory judgment on whether the arbitration award was enforceable and (2) an order under R.C. 2711.10(D) vacating the arbitration award. On September 21, 2012, Lamanna filed motions to dismiss the complaint, pursuant to Civ.R. 12(B)(6), and to confirm the arbitration award.

{¶ 6} The matter was referred to a magistrate, and the parties submitted briefs on the motions. Bilbrey-Jergens's memorandum in opposition to Lamanna's motion to confirm the arbitration award included an affidavit from David Bilbrey, president of Bilbrey Construction Company, which indicated that Lamanna's scope of work under the parties' agreement required a nursery stock dealer's license. Bilbrey stated that he inquired of the Ohio Department of Agriculture whether Lamanna was licensed; the Department of

Agriculture had no record that Lamanna was ever licensed under the nursery stock statute. The affidavit further indicated that Antonio Lamanna admitted during his testimony at the arbitration hearing that his company was unlicensed.

{¶ 7} On April 3, 2013, the magistrate issued a decision on the motion to dismiss and on whether the arbitration award was enforceable. The magistrate dismissed Bilbrey-Jergens's declaratory judgment claim on the ground that R.C. Chapter 2711 provided the exclusive means for challenging an arbitration award. The magistrate concluded that Bilbrey-Jergens's second claim was properly construed as a motion to vacate the arbitration award under R.C. 2711.13(D). The magistrate agreed with Bilbrey-Jergens that the arbitrator exceeded his authority by enforcing an "illegal contract." The magistrate found, for purposes of its decision, that Lamanna was a "dealer" under R.C. 927.53 and that Lamanna sold nursery stock to Bilbrey-Jergens under the parties' contract. The magistrate concluded that, because Ohio law required Lamanna to be licensed and it was not, the contract itself was illegal. The magistrate reasoned:

> To enforce the contract between the parties would be to subvert clear public policy and would sanction criminal conduct by Lamanna's. This is not to say that Lamanna's may not ultimately recover the amount awarded by the arbitrator on a quasi-contractual theory such as unjust enrichment. The Magistrate simply holds that the Arbitrator herein exceeded his powers by enforcing an illegal contract and sanctioning an illegal act, albeit arguably a de minimus illegal act.

The magistrate thus granted the motion to vacate the arbitration award and denied the motion

to confirm the award. Lamanna filed objections to the magistrate's ruling.

{¶ 8} On October 22, 2013, the trial court affirmed in part and overruled in part the magistrate's decision. The court affirmed the magistrate's determination that count two of the complaint was sufficient to constitute a motion to vacate the arbitration award and, thus, the trial court had jurisdiction to consider that claim. However, the trial court sustained Lamanna's objection to the magistrate's denial of Lamanna's motion to confirm the arbitration award and the grant of Bilbrey-Jergens's motion to vacate the award. Citing *Brust v. McCarty*, 3d Dist. Union No. 14-83-21, 1985 WL 9060 (Jan. 17, 1985), the trial court found that the parties' contract was not void, reasoning:

> In the case at bar, O.R.C. Section 927.53 does not explicitly state that contracts made in violation of it are void. Further, the penalty is de minimus. Non-compliance is a misdemeanor of the third degree for the first offense. Finally, under O.R.C. Section 927.68, the Director of Agriculture has the power to remove any nursery stock held for sale by an unlicensed dealer. Thus, the Director has broad powers to halt any continued violations of O.R.C. Section 927.53.

Because there was "no clear legislative intent" that contracts made in violation of R.C. 927.53 were void and the parties willingly entered into an agreement mandating binding arbitration, the trial court held that the magistrate erred in finding that the arbitrator exceeded his powers by ruling in favor of Lamanna. The court confirmed the arbitration award and denied the motion to vacate it.

{¶ 9} On October 24, 2013, the trial court entered judgment in favor of Lamanna

and against Bilbrey-Jergens in the amount of $37,720.52, plus costs.  Bilbrey-Jergens appeals from the trial court's judgment.

## II.  Was the Arbitration Award Unenforceable
## as Contrary to Public Policy?

{¶ 10}  Bilbrey-Jergens's sole assignment of error states:

The Lower Court erred by affirming an arbitral award which was contrary to

public policy, being based on criminal conduct.

{¶ 11}  "Appellate review of an arbitration award is confined to an evaluation of the judicial order confirming, modifying, or vacating the award; we do not review the merits of the arbitrator's award."  *Sicor Secs., Inc. v. Albert*, 2d Dist. Montgomery No. 22799, 2010-Ohio-217, citing, *e.g*., *Warren Edn. Assn. v. Warren City Bd. of Edn*., 18 Ohio St.3d 170, 174, 480 N.E.2d 456 (1985).  Because arbitration is a creature of private contract, courts must ignore errors of fact or law by the arbitrator.  *Piqua v. Fraternal Order of Police, Ohio Labor Council, Inc*., 185 Ohio App.3d 496, 2009-Ohio-6591, 924 N.E.2d 876, ¶ 18 (2d Dist.).

Judicial review of arbitration awards is limited in order to encourage parties

to resolve their disputes with arbitration.  This has long been public policy in

Ohio.  The state and courts encourage arbitration because it "provides parties

with a relatively speedy and inexpensive method of conflict resolution and

has the additional advantage of unburdening crowded court dockets."

Appellate courts must ensure that trial courts, the front line of arbitral review,

do not exceed the scope of their review authority.  Otherwise, "[a]rbitration,

which is intended to avoid litigation, would instead merely become a system of 'junior varsity trial courts' offering the losing party complete and rigorous de novo review." Thus, judicial review of an arbitrator's award is strictly limited, "and where a reviewing court exceeds the permissible scope of review such judgment will be reversed."

(Internal citations omitted.) *FOP, Ohio Labor Council, Inc.* at ¶ 16. We review the trial court's order de novo. *Id.* at ¶ 15; *United Ohio Ins. Co. v. Central Mut. Ins. Co.*, 2d Dist. Darke No. 2010 CA 21, 2011-Ohio-2432, ¶ 15.

**{¶ 12}** "The grounds upon which a trial court may vacate an arbitrator's award are few and narrow." *FOP, Ohio Labor Council, Inc.* at ¶ 19, citing *Dayton v. Internatl. Assoc. of Firefighters*, 2d Dist. Montgomery No. 21681, 2007-Ohio-1337. R.C. 2711.10 identifies four grounds upon which a common pleas court may vacate an arbitration award: fraud, corruption, misconduct, and the arbitrator exceeded his or her powers. Bilbrey-Jergens relies upon R.C. 2711.10(D), which authorizes a common pleas court to vacate an arbitration award when "[t]he arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

**{¶ 13}** The essential function of R.C. 2711.10(D) is "to ensure that the parties get what they bargained for by keeping the arbitrator within the bounds of the authority they gave him." *FOP, Ohio Labor Council, Inc.* at ¶ 21.

Like arbitral review generally, a trial court's inquiry into whether an arbitrator exceeded his powers under the parties' agreement is limited. Paragraph (D) is not violated if "the arbitrator's award draws its essence from

the * * * agreement and is not unlawful, arbitrary or capricious." Generally, if the arbitrator's award is based on the language and requirements of the agreement, the arbitrator has not exceeded his powers.

* * *

An arbitrator's award draws its essence from an agreement when (1) the award does not conflict with the express terms of the agreement and (2) the award has rational support or can be rationally derived from the terms of the agreement.

(Citations omitted.)   *FOP, Ohio Labor Council, Inc*. at ¶ 22, ¶ 24.

**{¶ 14}**   Bilbrey-Jergens asserts that the arbitrator exceeded his authority by awarding damages to Lamanna, because the enforcement of the award is contrary to public policy.

**{¶ 15}**   "[V]acating an arbitration award pursuant to public policy is a narrow exception to the 'hands off' policy that courts employ in reviewing arbitration awards and 'does not otherwise sanction a broad judicial power to set aside arbitration awards as against public policy.'"   *Southwest Ohio Regional Transit Auth. v. Amalgamated Transit Union, Local 627*, 91 Ohio St.3d 108, 112, 742 N.E.2d 630 (2001).   "A court may refuse to enforce an [arbitration] award when specific terms in the contract would violate public policy, but there is no broad power to set aside an arbitration award as against public policy."   *Board of County Commrs. v. L. Robert Kimball and Assoc*., 860 F.2d 683, 686 (6th Cir.1988), cited by *Dayton v. AFSCME, Ohio Council 8*, 2d Dist. Montgomery No. 21092, 2005-Ohio-6392, ¶ 23.

**{¶ 16}**   In *Southwest Ohio Regional Transit Auth.*, the regional transit authority

argued that it was against public policy to reinstate a safety-sensitive employee who was terminated for testing positive for a controlled substance. Although there were Ohio and federal laws prohibiting the use of controlled substances by transportation employees and requiring drug testing, the supreme court held that "Ohio has no dominant and well-defined public policy that renders unlawful an arbitration award reinstating a safety-sensitive employee who was terminated for testing positive for a controlled substance, assuming that the award is otherwise reasonable in its terms for reinstatement." *Id*. at 115.

{¶ 17} In determining that the arbitrator's award was enforceable, the trial court cited *Brust v. McCarty*, 3d Dist. Union No. 14-83-21, 1985 WL 9060 (Jan. 17, 1985), which concerned whether a farmer was required to pay for the bushels of soybean seeds he received from an unlicensed seller. It was undisputed that the plaintiff-seller transferred 1,067 bushels of soybean seed to the defendant-farmer, the seed was accepted and used by the defendant, but the defendant failed to pay for the seed. The farmer asserted that any agreement was void, because the seller was not properly licensed under Ohio's statutory scheme regulating the sale of agricultural seed.

{¶ 18} The Third District reviewed the entire statutory scheme to determine whether the legislature intended, "'in addition to imposing express penalties for the violation of the law, to render void any contract based on the prohibited act.'" *Id*. at *4, quoting *Warren People's Market Co. v. Corbett and Sons*, 114 Ohio St. 126, 151 N.E. 51 (1926), paragraph one of the syllabus. The appellate court noted the general rule that

> a contract founded on an act forbidden by a statute under a penalty is void,
> although it be not expressly declared to be so, * * *. But in applying the

> rule many courts have excepted from its operation one class of cases, viz., when the statutory prohibition is found in a statute enacted for the purpose of raising revenue or the regulation of traffic or business, when, unless it is manifestly the intention of the statute to make the contract void, the court will treat the contract as valid.

*Id.*, quoting *Warren People's Market* at 140-141. The Third District considered four factors in determining that the parties' agreement was not void: (1) the absence of a specific statement in the act that such contracts are void; (2) the penalty provision imposed a minimal penalty (a fine); (3) the title of the act indicated that it was concerned with the regulation and licensing of the sale of agricultural seed, not the illegality of sales; and (4) the director of agriculture had broad powers to enforce the terms of the act and halt any continued violation.

{¶ 19} Although *Brust* predates *Southwest Ohio Regional Transit Auth.*, the considerations used by the Third District (and the trial court) are instructive in determining whether Ohio has a "dominant and well-defined public policy that renders unlawful an arbitration award" in favor of Lamanna. Applying these considerations, we agree with the trial court's determination that the arbitrator's award did not violate public policy.

{¶ 20} At the outset, the terms of the subcontract agreement are lawful. The agreement provided that the subcontractor, Lamanna, would provide all landscaping, irrigation, site furnishings, pavers, and installation of a living roof. Lamanna was required to obtain any necessary permits and licenses and to comply with all federal, state, and local laws. Unlike, for example, an agreement to purchase proscribed drugs, there was nothing inherently illegal about the nature of the parties' agreement. The contract was allegedly

unlawful because Lamanna was not a licensed dealer under R.C. 927.51 and, thus, could not lawfully perform the contract. (We will assume, for purposes of this appeal, that Lamanna was a "dealer," as defined by R.C. 927.51.)

{¶ 21} In *Morrow Cty. Airport Auth. v. Whetstone Flyers, Ltd.*, 112 Ohio St.3d 419, 2007-Ohio-255, 860 N.E.2d 733, the Ohio Supreme Court addressed whether a contract was void when one of the parties entered into the agreement in violation of R.C. 2921.42(A)(1), which prohibited public officials from "[a]uthoriz[ing], or employ[ing] the authority or influence of his office to secure authorization of any public contract in which he, a member of his family, or any of his business associates has an interest." A violation of R.C. 2921.42(A)(1) was a felony. The supreme court held that, in the absence of a statutory provision to the contrary, a contract was not void, even though it was entered into in violation of R.C. 308.04 and R.C. 2921.42(A)(1). (After the supreme court's ruling, the Ohio legislature added a provision that contracts entered in violation of R.C. 2921.42 are "void and unenforceable." R.C. 2921.42(H).)

{¶ 22} R.C. 927.51 through R.C. 927.71 concerns nursery stock; it is not part of the criminal code. Under those provisions, the director of agriculture is granted broad authority to adopt rules to effectuate nursery stock statutes; to revoke, suspend, or refuse to issue any nursery certificate or dealer's license for any violations of the statutes or rules; and to publish reports describing nursery inspection and pest control operations authorized by the nursery stock statutes. R.C. 927.52. An employer may be held responsible for the acts of an employee that violate R.C. 927.51 to R.C. 927.71. R.C. 927.72(B). The nursery stock provisions include a criminal penalty for violations of the act; the offense is a petty offense

(third-degree misdemeanor for a first offense and a second-degree misdemeanor for subsequent offenses). R.C. 927.99. Nothing in the nursery stock statutes states that a violation of those provisions results in a contract being void.

{¶ 23} Upon review of nursery stock provisions, we conclude that Ohio has no dominant and well-defined public policy that renders unlawful an arbitration award that grants damages to a subcontractor/landscaper for breach of the parties' subcontract agreement, even though the subcontractor's conduct may have violated R.C. 927.53. The trial court did not err in confirming the arbitrator's award and denying Bilbrey-Jergens's motion to vacate the award.

{¶ 24} The assignment of error is overruled.

### III.  Conclusion

{¶ 25} The trial court's judgment will be affirmed.

. . . . . . . . . .

DONOVAN, J. and WELBAUM, J., concur.

Copies mailed to:

Richard L. Carr
Martina M. Dillon
J. Joseph Walsh
Hon. Barbara P. Gorman