[Cite as *Rainy Day Rentals, Inc. v. Next Gen. Properties, Inc.*, 2022-Ohio-3530.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MAHONING COUNTY

RAINY DAY RENTALS, INC.,

Plaintiff-Appellant,

v.

NEXT GEN. PROPERTIES, Inc. et al.,

Defendants-Appellees.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 21 MA 0096**

---

Civil Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2016 CV 00665

**BEFORE:**
Carol Ann Robb, Gene Donofrio, Cheryl L. Waite, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Bruce M. Broyles*, 1379 Standing Stone Way, Lancaster, Ohio 43130 for Plaintiff-Appellant and

*Atty. Christopher Sammarone*, 535 North Broad Street, Suite 4, Canfield, Ohio 44406 for Defendants-Appellees.

Dated: September 30, 2022

**Robb, J.**

**{¶1}** Appellant, Rainy Day Rentals, Inc., appeals the September 22, 2021 judgment rendered in favor of Appellees, Next Gen. Properties, Inc., Saroj Singh, and Prestige Enterprise, Inc., after a bench trial. The trial court found Appellant's claims for fraud in the inducement and declaratory judgment lacked merit and rescission of the parties' real estate purchase agreement was not warranted.

**{¶2}** Appellant's single assignment of error challenges the declaratory judgment aspect of the court's decision. Appellant contends the trial court erred by not concluding the parties' contract was void. For the following reasons, we affirm.

<u>Facts and Procedural History</u>

**{¶3}** On July 28, 2015, Appellant entered a real estate purchase contract to purchase property located on Bryson Street in Youngstown, Ohio. Next Gen. Properties, Inc. (Next Gen.) was listed as the seller and Saroj Singh (Singh) signed the contract as Next Gen.'s agent. A handwritten note on the contract indicates the property is owned by the listing agent's family. Also handwritten on the contract are the words "selling as-is condition, no warranties, no guarantees." (Tr. Plaintiff's Ex. 1.) After the purchase was complete, Appellant learned the property was subject to an existing "Notice to Repair or Raze Structure" issued by the City of Youngstown and the sellers Next Gen. and Singh were aware of the notice, had repeatedly appealed it to the city, but did not disclose it to Appellant before selling the property.

**{¶4}** Appellant filed suit on March 1, 2016 against Next Gen. and Singh, asserting they fraudulently induced Appellant to enter the purchase agreement by failing to inform Appellant the structure on the property was subject to this raze or repair order before executing the agreement. Singh was served with the order in October of 2014, which Appellees appealed to the city before selling the property to Appellant. (March 1, 2016 Complaint.)

**{¶5}** Appellant acknowledges purchasing the property as-is and further acknowledges the structure on the property was in disrepair and in need of numerous updates. However, Appellant claims it was not aware of the raze or repair order before entering the purchase agreement and Appellees intentionally failed to disclose the structure was subject to a demolition order when they agreed to sell. Appellant contended

this nondisclosure was designed to fraudulently induce Appellant into purchasing the property.  Appellant sought the trial court to rescind the purchase agreement.

{¶6}    Appellant filed its second amended complaint on January 6, 2020 naming the original defendants as well as Prestige Enterprise, Inc. and the City of Youngstown. Appellant claimed after its lawsuit was filed, Appellees transferred certain real estate to another corporation, Prestige Enterprise, Inc., which used the same assets, operated the same business, and also had Singh as its statutory agent.  Appellant sought recission based on the alleged fraud, successor liability, declaratory judgment, and money damages for wrongful demolition of the structure situated on the real estate.

{¶7}    As for the declaratory judgment claim, Appellant asked the court to determine the impact of the October 28, 2014 raze or repair order and Appellees' violation of the City of Youngstown's Property Maintenance Code Section 546.07, which dictates how a seller of real property subject to a city compliance order or notice of violation must proceed before transferring or selling the property to another.  After purchasing the property, Appellant claimed it was threatened with liability for the city's costs associated with razing the structure.  (January 6, 2020, Second Amended Complaint.)

{¶8}    Appellant also filed a third amended complaint seeking to add an additional claim for relief and separately moved to add the city as a necessary party defendant relative to the declaratory judgment claim.  The city moved to dismiss.  The trial court denied the motion for leave to file the third amended complaint and granted the city's motion to dismiss without prejudice, noting "[s]aid dismissal is without prejudice to enable the remaining party or parties to subsequently address any possible issues as a result of the tear down by the city."  (Feb. 5, 2020 Judgment Entry.)

{¶9}    Appellant moved for summary judgment and sought the court to find rescission of the parties' contract was required since it was void ab initio.  Appellant claimed the purchase agreement was illegal and entered in contravention to Youngstown City Ordinance 546.07, which prohibits the transfer or sale of real estate subject to an existing raze or repair order without the owner/seller submitting a notarized statement to the city verifying the buyer knows about the existing code violations and repair order and that the buyer assumes responsibility for complying with it.  Appellant urged the court to find the contract was illegal, in violation of public policy, and subject to rescission in light of Appellees' failure to satisfy the affidavit requirement set forth in the ordinance.

Appellees opposed the motion, and Appellant renewed their request for summary judgment, which the trial court ultimately overruled.  (Feb. 5, 2020 Judgment Entry.)

{¶10}  A bench trial was held on July 9, 2020, and the parties submitted proposed findings of fact and conclusions of law.  The court subsequently entered judgment in Appellees' favor holding in part:

> This was not plaintiff's first venture into the rehab business.  Plaintiff knew the condition of the property and had every opportunity to check on any demolition orders.   The ordinance prohibiting transfer without an assumption of liability did not void the agreement between the parties.
>
> Accordingly, the plaintiff has failed to prove its case for rescission and judgment is rendered in favor of the defendants.  Costs to plaintiff.

(September 22, 2021 Judgment Entry.)

{¶11}  Appellant's sole assignment of error on appeal contends the court erred by not finding the purchase agreement void.  Appellant does not raise any arguments arising from its fraud in the inducement claim, and thus, we do not address the court's resolution of this claim.  App.R. 12(A)(1)(b).

Assignment of Error:  Is the Contract Void?

{¶12}  Appellant's assignment of error states:

**"The trial court erred in failing to rescind the contract for the sale of real property that violated City of Youngstown Ordinance 546, which prohibits the transfer of real property which is the subject of the compliance order or notice of violation unless certain conditions are met."**

{¶13}  Appellant urges us to find Appellees' violation of Youngstown Ordinance 546.07 renders the purchase agreement void as a matter of law—not because one of the traditional elements of contract formation failed—but because it is in direct contravention to the city ordinance.  Appellant contends the contract is void because it is illegal and violates public policy.

{¶14}  The construction of written contracts and statutory construction in declaratory judgment actions present legal issues, which we review de novo.  *Graham v. Drydock Coal Co.,* 76 Ohio St.3d 311, 313, 667 N.E.2d 949 (1996), quoting *Alexander v. Buckeye Pipe Line Co.,* 53 Ohio St.2d 241, 374 N.E.2d 146 (1978), paragraph one of the syllabus; *Arnott v. Arnott,* 132 Ohio St.3d 401, 2012-Ohio-3208, 972 N.E.2d 586, ¶ 13-14.

Case No. 21 MA 0096

**{¶15}** Appellant contends because the transfer of the property from Appellees violates Section 546.07, the purchase agreement and sale are void ab initio and thus rescission is required. Section 546.07, *Transfer of Ownership,* is in the Youngstown Property Maintenance Code and states:

Transfer of ownership. *It shall be unlawful* for the owner of any dwelling unit or structure who has received a compliance order or upon whom a notice of violation has been served *to sell, transfer, mortgage, lease or otherwise dispose of such dwelling unit or structure to another* until the provisions of the compliance order or notice of violation have been complied with, or *until such owner shall first* furnish the grantee, transferee, mortgagee or lessee a true copy of any compliance order or notice of violation issued by the Code Official *and shall furnish to the Code Official a signed and notarized statement from the grantee*, transferee, mortgagee or lessee, acknowledging the receipt of such compliance order or notice of violation *and fully accepting the responsibility without condition for making the corrections or repairs* required by such compliance order or notice of violation. (Ord. 16-119. Passed 4-6-16.)

(Emphasis added.)

**{¶16}** As alleged, Youngstown City Ordinance 546.07, *Transfer of Ownership,* requires any seller of real estate who is subject to a repair or raze order to provide the buyer with the notice of violation and the city with a signed and notarized statement from the buyer indicating the buyer accepts responsibility for making the corrections or repairs required by the compliance order or notice of violation. Alternatively, the seller must make all the necessary repairs and improvements to ensure compliance with the repair order or notice of violation before transferring the property. *Id.*

**{¶17}** Section 546.03, *Enforcement*, empowers the appointed Code Official with the power to enforce the Youngstown Property Maintenance Code provisions, and Section 546.05 provides, "the owner is liable for all violations of this Code." Section 546.96, titled *Administrative Penalties*, authorizes the imposition of financial penalties after certain procedural requirements are satisfied.

Section 546.98, titled *Criminal Penalties*, provides in pertinent part:

(a) Any person in control who violates or fails to comply with any provision

of Chapter 546 of the Youngstown Codified Ordinances, or any order issued

by the Code Official or his or her designee, after notice pursuant to 546.06, shall be guilty of a misdemeanor of the third degree and shall be fined not more than $500.00 or imprisoned more than 60 days or both. Completion of any administrative appeals process is not a prerequisite to criminal prosecution.

(b) The provisions of this Code are specifically intended to impose strict liability. (Ord. 16-228. Passed 7-13-16.)

{¶18} At trial, Abigail Beniston testified she was the Youngstown City Code Enforcement and Blight Remediation Superintendent in 2014. She recalls handing a notice to repair or raze the structure on Bryson Street to Singh in October of 2014. (Plaintiff's Ex. 2.) Singh met with Beniston in her office where she gave Singh a copy of the three-page notice and had Singh sign the first page. It states in part on the first page: "YOU ARE HEREBY ORDERED TO REPAIR OR RAZE THE ABOVE-MENTIONED STRUCTURE(S) WITHIN THIRTY (30) DAYS." The second page of the notice sets forth the right to appeal and the prohibition on transferring ownership unless the buyer acknowledges and accepts compliance with the order. It quotes Youngstown Ordinance 546.07 in full. (Plaintiff's Ex. 2.) Beniston testified she notified Singh about the violations and the city's transfer of ownership stipulation. Singh appealed the order the same date to the Property Maintenance Appeals Board for additional time to comply. (Tr. 13-17.)

{¶19} Appellees were granted several appeals and extensions of time and initially were working with the city to satisfy the violations identified in the raze or repair order. But in May of 2015, Appellees did not appear or call to secure an additional extension of time to comply, and thus, their appeal and extension was denied. According to Beniston, Appellees did not provide the notarized statement to Appellant accepting responsibility for compliance with the violations at the Bryson Street property. The city likewise was not notified that the property was in compliance before it was transferred to Appellant. After Appellant acquired the property, the city sent Appellant a notice to repair or raze the structure in February of 2016. (Tr. 17-21.)

{¶20} Beniston verified that Appellees did not satisfy the notarized statement requirement when they sold the property to Appellant. (Tr. 21-22.) Beniston also confirmed the city could charge someone with a third-degree misdemeanor for the failure to comply with Youngstown Ordinance 546.07. (Tr. 40-41.) As far as Beniston knew, no

one was charged with a criminal offense as a result of the transfer of this property to Appellant and Appellees' failure to comply with Ordinance 546.07. (Tr. 41.)

**{¶21}** Beniston agreed anyone who drove by the property would be aware of its dilapidated condition and would believe the structure was in violation of "numerous codes and ordinances." (Tr. 30.) Beniston had never worked with Appellant before. (Tr. 32.)

**{¶22}** One of Appellant's owners and representative, Allan Bittner, testified he lived out of state and knew the building located on Bryson Street was in need of substantial improvements when his company purchased it. Appellant intended to spend approximately two years renovating it. Appellant was not, however, aware of the raze or repair order at the time of purchasing the property. Bittner testified his company learned about the raze or repair order months after purchasing it. They had no experience with raze or repair orders. Appellant knew the purchase agreement contained an as-is clause. (Tr. 55-59.)

**{¶23}** Singh testified her company also purchased the Bryson Street property while it was subject to an existing raze or repair order. She worked with city officials to make the necessary repairs to rehabilitate the structure, but her company was unable to secure the requisite loans or funding. Thus, Appellees did not make any improvements to the structure and did not remedy the property code violations before selling it to Appellant. (Tr. 144-148.)

**{¶24}** In its decision rendering judgment in Appellees' favor, the trial court found in part that Appellant had the opportunity to learn about the demolition order and did not do so. Appellant does not challenge this finding and instead argues that notwithstanding Appellant's ability to learn about the raze or repair order, Appellees' unambiguous violation of the city's ordinance rendered the purchase agreement illegal and void ab initio.

**{¶25}** "[I]t is the policy of the law to encourage freedom of contract, and that the courts should not interfere with this right unless it clearly appears that the execution of the contract will prejudice the public interest.'" *Gross v. Campbell*, 26 Ohio App. 460, 471, 160 N.E. 511 (7th Dist.1927), *aff'd,* 118 Ohio St. 285, 160 N.E. 852 (1928). "'The power of courts to declare a contract void as being against public policy is a delicate and undefined one, and, like the power to declare a statute unconstitutional, should be exercised only in cases free from doubt.' *Richmond v. Dubuque & S. C. R. Co.*, 26 Iowa, 191, at page 202." *Id*.

Case No. 21 MA 0096

{¶26} A "void contract" is a "contract that is of no legal effect, so that there is really no contract in existence at all." Contract, *Black's Law Dictionary* (11th ed. 2019). Contracts found void as in violation of law and contrary to public policy are void because the law disapproves of the purpose of the contract, consideration contemplated, or the terms of the agreement by which the parties seek to achieve their contractual purpose. Courts have voided certain agreements when the substance of the contract or the consideration is malum in se, meaning wrong in its very nature because the matter or thing contracted for violates the natural or moral norms of society. *See Warren People's Mkt. Co. v. Corbett & Sons*, 114 Ohio St. 126, 138, 151 N.E. 51, 54, 4 Ohio Law Abs. 89, 24 Ohio Law Rep. 183 (1926) (explaining courts will not find a contract void when in violation of a statute or law unless "the act prohibited is detrimental to the welfare or morals of the public" not just violative of a statute designed to raise revenue or regulate trade); *Hughes v. Ohio Div. of Real Estate*, 86 Ohio App.3d 757, 761, 621 N.E.2d 1249 (2nd Dist.1993) ("Conduct that is inherently wrong in and of itself or that is illegal from the very nature of the transaction is said to be malum in se.").

{¶27} "Malum in se" means "a crime or an act that is inherently immoral, such as murder, arson, or rape." Malum in se, *Black's Law Dictionary* (11th ed. 2019).

{¶28} In *Gross v. Campbell*, *supra*, this court considered the legality of a contract between a company and a private investigator hired to secure evidence to aid the company in a lawsuit. The defendant company claimed the contract was unenforceable in part because it was void as against public policy since the terms of the agreement provided that payment was contingent upon the result of the lawsuit in which the evidence was to be used. *Id*. at 470. While emphasizing the importance of freedom of contract, we held because it was abundantly clear the contract was for the investigator "to procure and furnish evidence of a particular kind to produce a certain result in a suit of law[,]" it was void since it was within the "prohibited class" and prejudicial to the public interest. *Id*. at 471-474. This court reached this decision only after highlighting it is acceptable to contract for an investigator to secure evidence to aid in litigation so long as the agreed compensation does not hinge on "the character of the testimony procured to be used in a suit to accomplish a particular result." *Id*. at 470.

{¶29} In *Marchetti v. Blankenburg*, 12th Dist. Butler No. CA2010-09-232, 2011-Ohio-2212, the Twelfth District Court of Appeals affirmed the trial court's decision refusing to enforce an agreement for the payment of money in exchange for the plaintiff not to

inform the applicable legal authorities that the defendant had sexually abused the plaintiff as a child. The victim filed suit seeking the payment of money from his alleged abuser, who allegedly agreed to pay the plaintiff in exchange for his silence. The trial court granted the defendant's motion to dismiss finding no legal contract to enforce since it was illegal, immoral, and against public policy. The appellate court agreed the subject matter of the contract was to prohibit the reporting of a felony offense and contrary to public policy. *Id.* at ¶ 13-14.

**{¶30}** In *McCullough Transfer Co. v. Virginia Sur. Co.*, 213 F.2d 440, 441 (6th Cir.1954), the plaintiff urged the court to find an insurance contract case was void because it was not in compliance with an applicable Ohio statute requiring an endorsement to be approved by Ohio's Superintendent of Insurance. The Sixth Circuit disagreed explaining, "[a] contract is not void as against public policy unless it is injurious to the public or contravenes some established interest of society." *Id.* at 443, citing *Gugle v. Loeser*, 143 Ohio St. 362, 367, 55 N.E.2d 580 (1944). "The insurance contract involved in this case, under which appellant has had the benefit of full performance by the appellee, is clearly not of that nature." *Id.*

**{¶31}** In reaching this decision, *McCullough* emphasized courts must also examine the statute as a whole to determine whether the legislature intended to make contracts entered in violation of the statute void based on the prohibited act. *McCullough* found although insurance contract regulation is a business regulated by the state, the failure to comply with the regulatory provision at issue did not render the contract of insurance void. In support, the Sixth Circuit emphasized the applicable statute, which had been violated, did not indicate a contract entered in violation of it rendered the contract void. Instead, the statute provided a $500 fine for the failure to comply. *Id.* at 442. The legislature's inclusion of the penalty provision and the absence of an indication that contracts entered in violation of the provision will be held void demonstrates the legislature's purpose was not to void contracts not in compliance. *Id.* citing *Warren People's Market Co. v. Corbett & Sons*, 114 Ohio St. 126, 151 N.E. 51, paragraph one of the syllabus ("'the court must examine the entire act to determine whether or not it was the purpose of the Legislature, in addition to imposing express penalties for the violation of the law, to render void any contract based on the prohibited act.'").

**{¶32}** Consistent with *McCullough*, we must examine the statute violated as a whole to ascertain the intent of the drafters and whether a violation should render

Case No. 21 MA 0096

contracts entered in violation of it void. Here, the city was empowered to impose administrative and criminal sanctions for violations against the property owner. Nothing in this section or in the city's Property Maintenance Code indicates the drafters intended to make a contract entered in contravention to the provisions void.

**{¶33}** Thus, notwithstanding Appellees' noncompliance with Section 546.07, the law does not support the contention that the parties' purchase agreement is void due to Appellees' violation. "Where a statute prohibits an act or annexes a penalty to its commission, it is true that the act is made unlawful, but it does not follow that the unlawfulness of the act was meant by the legislature to avoid a contract made in contravention of it." *Fischer-Liemann Const. Co. v. Haase*, 64 Ohio App. 473, 476, 29 N.E.2d 46 (1st Dist.1940), quoting *Harris v. Runnels*, 53 U.S. 79, 12 How. 79.

**{¶34}** Moreover, like the contract in *McCullough*, the underlying purpose of the agreement of providing insurance is not one that violates public policy. Like selling and providing insurance, the sale of real estate is not something that is malum in se and contrary to public policy. Thus, we do not find the contract here violates public policy or societal norms warranting a finding the contract is void for this reason. Consequently, Appellant's sole assigned error lacks merit.

Conclusion

**{¶35}** Because the substance of the parties' agreement is not a contract which contravenes an established interest of society or norm, we find it is not void as against public policy. Further, because the Youngstown Property Maintenance Code provides criminal and administrative penalties for violations and does not indicate a contract entered in violation of these provisions should be void, the parties' purchase agreement is not void for this reason as well. Appellant's sole assignment of error is overruled, and the trial court's decision is affirmed.

Donofrio, P J., concurs.

Waite, J., concurs.

Case No. 21 MA 0096

[Cite as *Rainy Day Rentals, Inc. v. Next Gen. Properties, Inc.*, 2022-Ohio-3530.]

—————————————

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**