[Cite as *Salem Twp. Bd. of Trustees v. Fazekas*, 2023-Ohio-2984.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## JEFFERSON COUNTY

BOARD OF TRUSTEES OF SALEM TOWNSHIP,

Plaintiff-Appellee,

v.

C. NICHOLAS FAZEKAS, et al.,

Defendants-Appellants.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 22 JE 0015**

---

Civil Appeal from the
Court of Common Pleas of Jefferson County, Ohio
Case No. 21-CV-385

**BEFORE:**
Carol Ann Robb, David A. D'Apolito, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Aaron A. Richardson,* Blake, Bednar, Blake & Richardson, 4110 Sunset Blvd., Steubenville, Ohio 43952 for Plaintiff-Appellee and

*Atty. Edward L. Littlejohn, Jr., Atty. Jeffrey D. Menoski,* 325 Frank P. Layman Blvd., Wintersville, Ohio 43953 for Defendants-Appellants

Dated: August 24, 2023

**Robb, J.**

{¶1}   Defendants-Appellants C. Nicholas Fazekas and Amber L. McClaskey (aka Fazekas) appeal the decision of the Jefferson County Common Pleas Court authorizing Plaintiff-Appellee Board of Trustees of Salem Township to abate a previously-declared nuisance by approving an inventory of items to be removed from Appellants' property. First, Appellants argue "junk motor vehicle" statutory provisions on notice or extensive damage were not satisfied.   Second, Appellants contend the court failed to apply the common definitions of "vegetation, garbage, refuse, and other debris" in the debris removal statute when reviewing items scattered about the property.   Third, Appellants say the court erred in granting default judgment without notice because their pre-litigation appearance at a board meeting to challenge the claims about their property should be considered an appearance in the action under Civ.R. 55(A).   For the following reasons, the trial court's judgment is affirmed.

## STATEMENT OF THE CASE

{¶2}   The board filed a complaint seeking injunctive and declaratory relief against Appellants due to the accumulation of "junk" items on their property.[1]   The board sought a declaration that the four vehicles listed in the complaint were junk motor vehicles and a permanent injunction ordering the removal of all junk motor vehicles and enjoining the future storage of junk motor vehicles on the property.   The board further sought a declaration that the accumulation of items on the property constituted a nuisance and a permanent injunction ordering removal and enjoining future accumulation or storage of garbage, rubbish, and junk.

{¶3}   The complaint recited the background information.   For instance, on March 22, 2021, a deputy inspected the exterior of the property with consent and wrote a report listing some items on the property such as HVAC parts, stagnant water in toilets and buckets, scrap materials, tractors in inoperable states, drink cans, trash, and junk motor vehicles (listing five vehicles and stating he could not yet determine if an old school bus was junk due to access issues).   (Ex. A) (three incident reports with photographs).   The

---

[1] Additional defendants were the Estate of Charles R. Fazekas (the vendor under a land purchase agreement with Appellants) and Capital One Bank (a real estate lienholder).

deputy returned on April 26, 2021 to view the property from the street and determined the property remained in the same condition.

**{¶4}** On May 19, 2021, the board issued a resolution declaring certain vehicles on the property to be junk motor vehicles and sent notice by certified mail ordering Appellants to remove the vehicles within 14 days or suffer removal by the board under R.C. 505.871. (Ex. B). The board also issued a resolution declaring the property a nuisance, and the board sent notice by certified mail ordering the removal of garbage, refuse, and other debris within 7 days or suffer removal by the board under R.C. 505.87. (Ex. D).

**{¶5}** After Nicholas Fazekas made certain comments to two township employees, the board sought assistance from the sheriff's department before entering the property. The prosecutor's office advised the board to protect itself further by obtaining a court order before entering the premises (despite the self-help procedure permitted by the statutes cited in the notices). Thereafter, the deputy returned to the property with consent to enter only the front yard.

**{¶6}** On October 27, 2021, the board served a notice ordering Appellants to remove four junk motor vehicles (silver 2004 Jeep Liberty, silver Dodge Caravan, white GMC pickup truck, and gold Buick SUV) and a separate notice ordering the removal of garbage, rubbish, and junk. (Ex. C, E). The notices ordered Appellants to remove (or conceal) the items within 30 days and advised they could be heard at the next board meeting in order to resolve the matter before a lawsuit was filed. The notices were sent by certified mail and posted at the property.

**{¶7}** Nicholas Fazekas appeared at the November 15, 2021 board meeting, denied three of the four vehicles were junk motor vehicles, denied the property was a nuisance, declined the offer of assistance with clean-up, and indicated his intent to refuse to comply with the order. The board moved to file suit against Appellants at the meeting.

**{¶8}** On December 6, 2021, the board filed the lawsuit seeking an injunction and declaration on the junk motor vehicles and the nuisance premises (as reviewed supra). Appellants were personally served with the complaint on December 11, 2021. When Appellants failed to file an answer or any other pleading, the board filed a motion for

default judgment on April 7, 2022. After a hearing, the court granted default judgment to the board. (4/25/22 J.E.).

{¶9} The court declared the four vehicles listed in the complaint were junk motor vehicles to be immediately removed by Appellants, permanently enjoined the future storage of junk motor vehicles on the premises, and authorized the board to enter the property to remove all vehicles meeting the definition of junk motor vehicles under R.C. 505.173 if they were not removed by May 25, 2022. The court also declared the accumulation of garbage, rubbish, and junk on the property was a nuisance to be immediately removed by Appellants; the court permanently enjoined the accumulation or storage of garbage, rubbish, and junk on the property and authorized the board to enter the property to remove all such remaining items on May 25, 2022. The entry noted it was a final appealable order (and said there was no just reason for delay). The clerk's docket shows Appellants were served with the order by mail. They did not file an appeal.

{¶10} On June 29, 2022, the board filed a motion to enforce the judgment and to show cause why Appellants should not be held in contempt. The motion asked for a court order directing the board's agent to enter the property (under the observation of the sheriff) to take photographs in order to compile an inventory for a ruling as to which items should be removed. The board opined the motion was necessary due to safety concerns based on comments made by Mr. Fazekas, and a trustee's affidavit was attached to the motion disclosing some of those comments. For instance, Mr. Fazekas appeared at a township official's home "in an outrage" and "made comparisons to the 'Killdozer' incident, which was a rampage that occurred in Granby, Colorado, during which a citizen used an armor-plated bulldozer to demolish thirteen buildings after a dispute with the city." Additionally, at the township meeting, Mr. Fazekas declared entry onto his property would be unsafe due to traps he set for thieves, noting he recovered money against Weirton, West Virginia after that city attempted to move a junk vehicle he had attached to the foundation of his house.

{¶11} The court ordered Appellants to show cause why they should not be held in contempt. Appellants appeared at the hearing, and the court set a date for the board to take an inventory (with the sheriff observing). The parties were advised to file a motion if a dispute arose as to what was "junk" with a hearing set for August 17, 2022, which would

allow the court to resolve any dispute before the August 20, 2022 date set for the board's removal work. The court found Appellants in contempt, sentenced them to 10 days in jail, and suspended the sentence pending cooperation with the order setting the inventory procedure. (7/22/22 J.E.).

**{¶12}** The inventory was conducted, and the board filed a motion to approve the inventory, which was attached as a list of 216 items. An old school bus was number five on the list. The hearing proceeded as scheduled with testimony presented by a trustee (who identified the items in photographs) and by Appellants (who appeared pro se). (Tr. 1-168). Appellants claimed the bus, a truck, and an SUV were in running condition. They said old lawn tractors and engines were collector's items and the mass of other items on the property were still being used or were related to various jobs performed by Mr. Fazekas, who acknowledged their property was only half an acre.

**{¶13}** On August 18, 2022, the court authorized the board to remove all items on the list (and apply any money received from the items to the cost of removal). The court's order pushed back the removal until September 17, 2022, pointing out Appellants still had time to remove any items from the yard.

**{¶14}** Appellants obtained counsel and filed a timely notice of appeal, citing and attaching the August 18, 2022 order as the order on appeal. Appellants' docketing statement also cited it as the order on appeal but had both that order and the April 25, 2022 default judgment attached (in response to the form's instruction to attach "orders resolving all claims"). This court denied Appellants' motion seeking a stay without bond pending appeal. Our judgment denying the stay pending appeal pointed out the only judgment on appeal was the order granting permission to abate the nuisance by removing items on an inventory list. (11/7/22 J.E.).

**{¶15}** As Appellants did not obtain a stay, many of their arguments could be considered moot. "An event that causes a case to become moot may be proved by extrinsic evidence outside the record." *State ex rel. Cincinnati Enquirer, Div. of Gannett Satellite Info. Network, Inc. v. Dupuis*, 98 Ohio St.3d 126, 2002-Ohio-7041, 781 N.E.2d 163, ¶ 8. This extrinsic evidence includes an appellant's acknowledgement of post-judgment facts to the extent those facts make a particular argument or holding moot. *Id.*

at ¶ 8-9.  For instance, Appellants acknowledge the board already abated the nuisance by cleaning the property.

{¶16}  Although not clearly labeled, Appellants' brief appears to set forth three assignments of error related to the following topics:  (1) junk motor vehicle statutes; (2) the items constituting a nuisance to be abated under the debris removal statute; and (3) the entry of default judgment without notice.  Before addressing these topics, we address Appellants' suggestion that our review should proceed under a de novo standard with no deference to the trial court.

<u>STANDARD OF REVIEW</u>

{¶17}  Appellants say an injunction in a nuisance action is reviewed under an abuse of discretion standard but a declaratory judgment is reviewed under a de novo standard of review.  Different standards of review apply in an action for declaratory relief or injunction depending on the argument made.  *See Arnott v. Arnott*, 132 Ohio St.3d 401, 2012-Ohio-3208, 972 N.E.2d 586, ¶ 13 ("the abuse-of-discretion standard applies to the review of a trial court's holding regarding justiciability; once a trial court determines that a matter is appropriate for declaratory judgment, its holdings regarding questions of law are reviewed on a de novo basis").

{¶18}  The interpretation of a statute in a declaratory judgment action presents a legal issue.  *Rainy Day Rentals, Inc. v. Next Gen. Properties, Inc.*, 2022-Ohio-3530, 198 N.E.3d 163, ¶ 14 (7th Dist.).  "We review questions of statutory interpretation de novo." *Columbus Bituminous Concrete Corp. v. Harrison Twp. Bd. of Zoning Appeals*, 160 Ohio St.3d 279, 2020-Ohio-845, 156 N.E.3d 841, ¶ 19.  "In contrast to determinations of fact which are accorded considerable deference, questions of law are examined by this court *de novo.*"  *Ohio Bell Tel. Co. v. Pub. Util. Comm.*, 64 Ohio St.3d 145, 147, 593 N.E.2d 286 (1992).

{¶19}  Where the grant of an injunction is discretionary with the trial court, the judgment cannot be disturbed on appeal absent a showing the trial court abused its discretion.  *Waste Techs. Indus. v. Tri-State Env. Council*, 7th Dist. Columbiana No. 91-C-69 (Dec. 16, 1992).  A court abuses it discretion if the decision is unreasonable, arbitrary or unconscionable.  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).  The appellate court cannot substitute its judgment for that of the trial court.

*Id.* Relatedly, factual issues in nuisance cases resulting in a permanent injunction can be reviewed under the manifest weight of the evidence standard. *Trumbull Cty. Bd. of Health v. Snyder*, 74 Ohio St.3d 357, 360, 658 N.E.2d 783 (1996). In a nuisance case where an injunction was issued, a "court will not disturb a factual finding on review as being against the manifest weight of the evidence so long as there is some competent evidence to sustain the findings of the trial court." *Pizza v. Sunset Fireworks Co.*, 25 Ohio St.3d 1, 8, 494 N.E.2d 1115 (1986). Contrary to Appellants' contention, factual decisions involving discretion, credibility, and weight of the evidence are not reviewed de novo.

**{¶20}** As to certain issues, the board points out the declaratory judgment and the injunction were set forth in the April 25, 2022 order while the order on appeal is the August 18, 2022 order to enforce the injunction with a specific inventory approval. Appellants construe the August 18, 2022 order as a "redetermination" of certain issues in the April 25, 2022 judgment.

ASSIGNMENT OF ERROR ONE

**{¶21}** Appellants' first assignment of error, which separately discusses two statutes pertinent to junk motor vehicles, alleges:

"Appellee and the Trial Court failed to Follow Statutory Guidelines."

**{¶22}** The first statute Appellants rely on under this assignment of error is R.C. 505.871. This statute states the "board of township trustees may provide, by resolution, for the removal of any vehicle in the unincorporated territory of the township that the board determines is a junk motor vehicle, as defined in section 505.173 of the Revised Code." R.C. 505.871(A). When the vehicle is on private property, the board must serve a written notice of intent which generally describes the vehicle and indicates: (a) the board determined the vehicle is a junk motor vehicle; (b) the board may remove or cause the removal of the vehicle if the landowner fails to remove it within 14 days of service of the notice; and (c) the board's costs may be entered on the tax duplicate as a lien on the land. R.C. 505.871(C)(1).

**{¶23}** Appellants complain the notice the board served under R.C. 505.871(C) did not list their bus (when listing four motor vehicles) and thus they were not provided proper notice the bus was being considered a junk motor vehicle. They point out the bus was also absent from the complaint (which listed the four motor vehicles from the notice).

{¶24} The board points out the lawsuit contained a nuisance cause of action (in addition to seeking a declaration on four specific vehicles) and the court declared the property a nuisance due to the entire collection of junk items on the property with a permanent injunction against accumulating or storing garbage, rubbish, and junk on the property in the future. (4/25/22 J.E.). Appellants acknowledge a nuisance cause of action was also contained in the complaint and concede a motor vehicle can constitute refuse or debris in such an action. However, they argue the board's actions show intent to separate the junk motor vehicle part of the action from the nuisance action (e.g., the board issued separate resolutions and notices for the junk motor vehicles and the property as a nuisance, and the board's complaint had counts for junk motor vehicles and counts for the property as a nuisance).

{¶25} Regardless, the board points out the notice in R.C. 505.871(C) allowed them to remove the vehicles without the involvement of a court. Instead, they filed a court action. Although only four specific vehicles were listed in the junk motor vehicle part of the action, there was a nuisance action as well. The attachments to the complaint admitted by default referred to the bus and the inability to access it. When the court declared four specific motor vehicles to be junk motor vehicles, the court also issued a permanent injunction against storing any other junk motor vehicles on the property. Appellants were ordered to remove "all junk motor vehicles" with authorization for the board to enter the property to remove "all" such vehicles if not removed by May 25, 2022. (4/25/22 J.E.).

{¶26} Months later, Appellants appeared at a hearing to answer for contempt, violation of the permanent injunction, and the board's request for a new entry date with a court-approved inventory. As the board did not end up following through with the self-help removal procedure, the content of the prior notice was not relevant to the enforcement of the injunction (previously granted by default judgment). The court informed Appellants they could challenge items on the inventory list compiled by the board (except for the junk motor vehicles listed in the complaint). (7/22/22 J.E.). The bus was the fifth item on the board's inventory list.

{¶27} Appellants did not seek a continuance of the second enforcement hearing or retain counsel. Instead, they appeared at the hearing where they presented testimony

regarding the bus, which the court apparently did not believe, as discussed further infra. They also had the opportunity to relocate the bus before the board's removal of it, as the court then provided them an additional month to remove whatever inventory items they wished before the board could enter to perform the removal. (8/18/22 J.E.). Contrary to Appellants' contention, they had notice and an opportunity to contest the removal of the bus due to the post-judgment injunction enforcement hearing held in this case.

{¶28} The next section of this assignment of error relies on R.C. 505.173(E), which is the definition statute cited in R.C. 505.871(A). A junk motor vehicle is statutorily defined as "a motor vehicle that meets all of the following criteria: (1) Three model years old, or older; (2) Apparently inoperable; [and] (3) Extensively damaged, including, but not limited to, any of the following: missing wheels, tires, engine, or transmission." R.C. 505.173(E).

{¶29} Appellants contest whether the evidence established the third element, relying on the Eleventh District's *Keen* case. In that case, the court found competent, credible evidence of the second subjective element, noting the board was "not required to prove that the vehicle was in fact inoperable; only that it appeared to be so." *Atwater Twp. Trustees v. Keen*, 11th Dist. Portage No. 2003-P-0001, 2003-Ohio-6960, ¶ 31. However, on the third element, the Eleventh District held: "The examples given in R.C. 505.173(E)(3) relate to the mechanical functioning of the vehicle, not its cosmetic appearance. We decline to engraft into the statute a requirement that the vehicle be cosmetically pleasing." *Id.* at ¶ 34. The court then found the board presented no evidence the vehicle was extensively damaged where: the zoning inspector testified it was dirty and filled with debris; he was unable to observe the tires on the vehicle because it was sunk into the ground; and the owner testified the vehicle had good tires on it. *Id.* at ¶ 33.

{¶30} Appellants argue there was no evidence of extensive mechanical damage seemingly focusing on the bus (as they do not specify facts as to other motor vehicles in this argument). While they concede the trial court could consider subjective criteria on the second element ("apparently" inoperable), they complain the court used the same non-objective criteria, including cosmetic features, when considering the third element. This argument suggests a court evaluating a vehicle's damage could not consider circumstantial evidence, such as the following evidence in this case: the placement of

the vehicles; the contents of vehicles; expired registrations (including as long ago as 2014); switched license plates; a cracked windshield; dents and rust; a hood apparently unable to completely close; flat tires; evidence of non-movement for long periods (ground indentations, a running board which appeared to have been recently unburied, and a jack left by a vehicle); and other treatment of the vehicles (such as allowing vegetation to grow high around them before the recent mowing).

**{¶31}** The board points out the court was not required to explain precisely how it reached its decision on each feature of each vehicle. The board also reiterates its emphasis on the nuisance action portion of the injunction, prohibiting the accumulation or storing of garbage, rubbish, and junk on the property. (4/25/22 J.E.). In any event, the board states a court could reasonably find all motor vehicles qualified as junk motor vehicles and points out R.C. 505.173(E)(3) "does not limit the damage to the listed items." *LePage v. Board of Trustees of Thorn Twp.*, 5th Dist. Perry No. 03 CA 4, 2004-Ohio-380, ¶ 57-58, 69 (finding sufficient evidence of extensive damage with photographs supporting the court's weighing of the evidence).

**{¶32}** Initially, we point out Appellants do not convincingly explain how the junk motor vehicle label as to the vehicles listed in the complaint subject to the default judgment order could be relitigated in the enforcement action. The court explained the hearing was not a second chance to contest the decision on those vehicles. In fact, Nicholas Fazekas testified he removed two of those motor vehicles prior to the final enforcement hearing, and they were thus not on the inventory list. (Tr. 35).

**{¶33}** As to the element on extensive damage (related to other motor vehicles), the statute specifically says "including, *but not limited to*, any of the following: missing wheels, tires, engine, or transmission." (Emphasis added). R.C. 505.173(E). Some of the statutory examples of extensive damage show the definition is not as strict as Appellants contend. For instance, the examples include missing wheels or tires, even though such condition may not commonly be thought of as damage (or extensive damage). In any event, the photographs and the circumstantial evidence were relevant to whether the motor vehicles remaining on the property had extensive damage (even if considering only mechanical features as claimed by Appellants). Also relevant was Appellants' credibility or lack thereof (as discussed further infra). These conclusions are

also applicable to other items, which Appellants may assume are motor vehicles but which are not specified within their general argument. "Circumstantial evidence and direct evidence inherently possess the same probative value." *State v. Treesh*, 90 Ohio St.3d 460, 485, 739 N.E.2d 749 (2001).

{¶34} Regarding the bus, Appellants argue: "the school bus had dirt and debris on it and was filled with miscellaneous items. But it was not missing any wheels, tires, and its engine and transmission worked adequately. There was no extensive damage related to its mechanical functioning and was drivable." (Apt.Br. 10). They rely on the following testimony by Amber Fazekas: "So the school bus, it ran yesterday. He moved it yesterday." (Tr. 62). Appellants allege certain occurrences *after* the enforcement decision and appeal support this argument.

{¶35} However, although facts outside the record can render an appellant's argument moot, they cannot be considered by this court to support an appellant's argument of an error occurring below. *Matter of M.L.S.*, 7th Dist. Harrison No. 21 HA 0010, 2022-Ohio-2195, ¶ 29-30, citing *State v. Ishmail*, 54 Ohio St.2d 402, 377 N.E.2d 500 (1978), paragraph one of the syllabus ("A reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter."). *See also Dupuis*, 98 Ohio St.3d 126 at ¶ 8-9 (extrinsic evidence acknowledged by an appellant can render an appellate argument moot).

{¶36} As to all motor vehicles, the credibility of the claims made in Appellants' testimony was presented as part of the board's case. "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 118, quoting *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The trial court occupied the best position from which to weigh the evidence and judge the witnesses' credibility by observing their gestures, voice inflections, demeanor, and any other common indicators of untruthfulness. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). It was for the trial court to discern their honesty.

{¶37} Viewing all the evidence and reasonable inferences, a rational fact-finder could conclude the bus and other motor vehicles in the inventory were junk motor

vehicles, and it is not patently apparent the trial court lost its way and created a manifest miscarriage of justice in an exceptional case. *See State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 219-220. *See also Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517. The first assignment of error is overruled as the trial court's decision was not unreasonable, arbitrary, or unconscionable, and the court did not legally or factually err in enforcing the injunction on the topics specified under this assignment of error.

ASSIGNMENT OF ERROR TWO

{¶38} Appellants' second assignment of error contends:

"The Trial Court Failed to Apply the Correct Standard for Nuisance."

{¶39} Pursuant to R.C. 505.87(A), the "board of township trustees may provide for the abatement, control, or removal of vegetation, garbage, refuse, and other debris from land in the township, if the board determines that the owner's maintenance of that vegetation, garbage, refuse, or other debris constitutes a nuisance." The board can abate such nuisance after 7 days notice and place the costs as a tax lien on the property. R.C. 505.87(E)-(F).

{¶40} Rather than use this self-help remedy, the board sought a declaratory judgment with injunctive relief and then filed for contempt and enforcement of the injunction. The court's entry enforcing the injunction and approving the inventory regularly used the word "junk" in finding the listed items were prohibited under the prior nuisance injunction. At the beginning of the entry, the court referred to "junk, rubbish, and refuse" in reciting the prior grant of default judgment with the injunction and declaratory judgment on the nuisance property. In that prior default judgment entry, the court referred to "garbage, rubbish, and junk."

{¶41} Appellants say, with the exception of the word garbage, the words used by the court are not relevant to R.C. 505.87(A), complaining the court made up a category and arbitrarily called their belongings junk. They also claim the court failed to use the common or ordinary meaning of the words in the statute as required by R.C. 1.42. Citing a 1978 Webster's Dictionary entry, Appellants claim the ordinary definition of garbage is limited to "spoiled or waste food, as from a market or kitchen, that is thrown away." They conclude the board failed to show any items met this definition.

{¶42} Clearly, an ordinary person's use of the word garbage does not solely refer to food waste. Mirriam-Webster's online dictionary defines garbage as including not only "1a: food waste" but also "b: discarded or useless material" and "2a: TRASH" (while referring back to 1b). With a link to trash, it then defines trash as including "something worth little or nothing: such as * * * things that are no longer useful or wanted and that have been thrown away: JUNK, RUBBISH" and also including "something in a crumbled or broken condition or mass." This dictionary also defines the noun refuse used by the court as both "the worthless or useless part of something" and as "TRASH, GARBAGE." Moreover, the term debris is defined as including "the remains of something broken down or destroyed [or] something discarded: RUBBISH." https://www.merriam-webster.com/dictionary. There was no error in the trial court using the word garbage despite the absence of food waste or in using terms such as rubbish, refuse, and junk in finding the items constituted a nuisance and in finding Appellants failed to abide by a prior injunction regarding the nuisance.

{¶43} Appellants additionally argue various items on the inventory list should not have been considered part of the nuisance as they were not "vegetation, garbage, refuse, and other debris" as used in R.C. 505.87. The board points out the record is replete with photographs depicting the items on the inventory list and supporting the trial court's determination that those items were discarded, useless, worthless, or destroyed garbage. As the trial court noted, the photographs help tell the story of this nuisance property. Furthermore, Appellants' credibility could reasonably be seen as highly suspect by the trial court.

{¶44} They said Nicholas Fazekas performed general maintenance for large corporate chain stores or HVAC work and claimed many of the rusted items left out in their half-acre yard were work related. The court noted the condition of the items belied the claim that the items continued to be useful in his trade. In fact, Appellants' testimony indicated many of these items were discarded by various places where Mr. Fazekas performed services.

{¶45} Appellants claimed large rolls of carpet were used to protect customers' floors from tracked-in dirt; however, leaving them out in the open suggests they were scavenged rather than used to protect a business from dirt. They had multiple tanks

stored outside, including sixteen propane tanks. Many tanks were seemingly brought home by Mr. Fazekas to avoid paying for proper disposal with Mr. Fazekas citing to EPA regulations prohibiting the venting of gasses collected during the performance of services.

{¶46} There were glass panels stacked and wires scattered about; other wire was on deteriorating spools. Rusty items and parts were piled up and sitting out in the elements, sometimes in old shopping carts. Mr. Fazekas acknowledged various items on the list were scrap he collected, claiming he lacked sufficient time to get to the scrapyard. Appellants also spoke of collecting scrap lumber after a neighbor's construction project. Used tires were in abundance throughout the yard. Mrs. Fazekas even spoke of a stranger stopping and asking if he could drop off items for disposal at their property.

{¶47} Appellants said they should be permitted to collect old engines and lawn tractors, which the trustee opined appeared non-operational. Trailers were seen with rotted or absent decking and with flat, buried, or deteriorated tires. Weeds were growing through or out of trailers, tractors, and boats (which Mr. Fazekas said had not been used in years). They wanted to restore various items, but Mr. Fazekas indicated he lacked free time to do the restoration work (as he worked 16 hours a day six days a week and often left the state for months at a time) and Mrs. Fazekas indicated they did not want to expend funds on restoration work (due to the high price of parts).

{¶48} They also claimed certain broken or partial items were used by their children (whose ages Mr. Fazekas claimed were three years younger than the ages disclosed by his wife). Mr. Fazekas said some of the inventory items would fit in his garage but then said he wanted his garage to have space in it (in case he ever gained free time to work on other items).

{¶49} The trial court aptly observed it looked like they were running an unlicensed junkyard. The evidence and reasonable inferences indicated Appellants gathered other people's garbage, refuse, and other debris, scrapped some of it, and stored the rest of it outside in their small yard where it remained garbage, refuse, and other debris (otherwise known as rubbish, junk, or trash). Appellants had multiple opportunities to move the items piled and scattered from their yard, including in the month after the final enforcement hearing.

{¶50} As the board points out (discussed further elsewhere herein), the property's status as a nuisance is not the issue on appeal and was not at issue at the August 17, 2022 hearing, which was held in order for the board to protect itself by obtaining specific court authorization on various items before abating the nuisance declared in April 2022. There existed sufficient evidence as a rational trier of fact construing all evidence and reasonable inferences in favor of the board could find the items were part of the previously-declared nuisance, and it is not patently apparent the trial court lost its way and created a manifest miscarriage of justice in an exceptional case. *See Lang*, 129 Ohio St.3d 512 at ¶ 219-220. *See also Eastley*, 132 Ohio St.3d 328.

{¶51} As set forth supra, "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *Hunter*, 131 Ohio St.3d 67 at ¶ 118, quoting *DeHass*, 10 Ohio St.2d 230 at paragraph one of the syllabus. The trial court occupied the best position from which to weigh the evidence, including the photographs, and judge the witnesses' credibility by observing their gestures, voice inflections, demeanor, and any other common indicators of untruthfulness. *Seasons Coal Co.*, 10 Ohio St.3d at 80.

{¶52} Finally, Appellants did not obtain a stay (which they requested without bond), and they acknowledge the board already cleaned the property under the enforcement order (allowing the disposal of items with any scrap money applied toward the abatement costs). Hence, any specified (or unspecified) arguments on individual items could be considered moot. *See also Dupuis*, 98 Ohio St.3d 126 at ¶ 8-9 (extrinsic evidence acknowledged by an appellant can render an appellate argument moot). For the foregoing reasons, this assignment of error is overruled.

ASSIGNMENT OF ERROR THREE

{¶53} Appellants' third and final assignment of error provides:

"The Trial Court erred when it entered a Default Judgment against the Appellants."

{¶54} A plaintiff can move in writing or orally if entitled to a default judgment because the defendant "has failed to plead or otherwise defend as provided by these rules * * *." Civ.R. 55(A). "If the party against whom judgment by default is sought has appeared in the action, he (or, if appearing by representative, his representative) shall be served with written notice of the application for judgment at least seven days prior to the

hearing on such application." *Id.* *See also* Civ.R. 5(A) (service of pleadings after original complaint "is not required on parties in default for failure to appear"); Civ.R. 8(D) (allegations in a complaint are deemed admitted unless denied in a properly filed responsive pleading).

**{¶55}** Appellants claim they appeared in the action and were thus entitled to notice of the motion for default judgment before the hearing. The board says this assignment of error is frivolous because Appellants failed to appeal the default judgment, which contained the declaratory judgment and the permanent injunction (with no issue of damages outstanding). The board points out our judgment denying a stay (prior to briefing) specifically said the only judgment on appeal was the August 18, 2022 judgment (not the judgment declaring the property a nuisance). (11/7/22 J.E.).

**{¶56}** Appellants do not set forth a valid analysis on the issue of their failure to appeal the final order issued on April 25, 2022. For instance, they refer to law stating a default judgment without notice to an appearing party is voidable under Civ.R. 60(B). *See* Civ.R. 55(B) ("If a judgment by default has been entered, the court may set it aside in accordance with Rule 60(B)."). *See also Deutsche Bank Natl. Trust Co. v. Lagowski*, 7th Dist. Belmont No. 10 BE 28, 2012-Ohio-1684, ¶ 54. However, Appellants did not file a Civ.R. 60(B) motion.

**{¶57}** Regardless, it cannot be concluded that Appellants "appeared in the action" under Civ.R. 55(A). In general, an appellate court reviews a trial court's decision to grant a motion for default judgment for an abuse of discretion. *Zerger v. Schafer*, 7th Dist. Noble No. 18 NO 0465, 2020-Ohio-4817, ¶ 7. Legal issues are reviewed de novo, including matters of rule interpretation. *Byrd v. Lindsay Corp.*, 7th Dist. Mahoning No. 19 MA 0116, 2020-Ohio-5461, ¶ 40 ("While a discovery order is ordinarily examined for an abuse of discretion, the interpretation of a civil rule presents a question of law, which is reviewed de novo.").

**{¶58}** Appellants rely on the record showing they appeared at the November 15, 2021 board meeting. (Complaint; 8/17/22 Transcript). They claim their appearance at the pre-complaint board meeting demonstrated their clear intent to defend a future lawsuit and constituted an appearance for purposes of the default judgment rule. They note an appearance does not require a pleading. *See Hiener v. Moretti*, 11th Dist. Ashtabula No.

2009-A-0001, 2009-Ohio-5060, ¶ 12 (while a party necessarily "appears" through the filing of a proper pleading, such filing is not the only way to "appear" for purposes of entitlement to notice before default judgment). They also claim courts do not limit the informal acts qualifying as an appearance to those occurring post-complaint, citing *AMCA Intern. Corp. v. Carlton*, 10 Ohio St.3d 88, 89, 461 N.E.2d 1282 (1984) and *Baines v. Harwood*, 87 Ohio App.3d 345, 346, 622 N.E.2d 372 (12th Dist.1993).

**{¶59}** However, the cited cases are not on point and are distinguishable. In *AMCA*, the employer filed an appeal to the common pleas court from an agency decision allowing additional workers' compensation. To ensure service of the notice of appeal after it was filed, the employer contacted the employee's prior attorney, who eventually filed a complaint in the action on the employee's behalf (as required under a former worker's compensation statute). *AMCA Intern. Corp.*, 10 Ohio St.3d at 88. After the period for filing a timely answer passed but before a default judgment motion was filed, the employer's law firm called the employee's attorney to say they did not have a copy of the complaint in their file and asked for a copy so an answer could be prepared. *Id.* at 88-89. The employee's attorney sent the complaint the next day and filed a default judgment motion a week later without notice to the defendant; default was entered the day after the motion was filed. *Id.* at 89.

**{¶60}** The Supreme Court found the defendant "made clear its purpose to defend the suit" and engaged in actions constituting an appearance in the action entitling the defense to notice of the default judgment motion. *Id.* at 90-91 (noting the defendant-employer was the party who initiated the action and a phone call showed the intent to defend as well). The facts are distinct with all cited communications occurring *after* the trial court's jurisdiction was invoked. *Id.* at 88-90. (We also note the *AMCA* case involved an administrative appeal to a court, and the Court did not rely on involvement in the administrative proceedings to find an appearance in the trial court action; the case at bar does not involve an administrative appeal.) Likewise, the appellate cases relied on by Appellants involved acts occurring after the complaint was filed. *Baines*, 87 Ohio App.3d at 346 (involving a phone call to discuss settlement after the complaint was filed); *Hiener*, 11th Dist. No. 2009-A-0001 (involving an untimely pleading filed in the action).

**{¶61}** "A defendant can 'appear in an action' by clearly expressing to the opposing party an intention and purpose *to defend the suit*, regardless of whether a formal filing is made." *Johnson v. Romeo*, 7th Dist. Mahoning No. 06 MA 4, 2006-Ohio-7073, ¶ 22 (Emphasis added) (affirming the vacation of default judgment after agreeing the defendant was entitled to notice because he appeared in the action by sending a letter to the plaintiff's attorney disputing the assertions in the complaint). Although a formal filing with the court is not required, the plain language of the rule speaks of an appearance "in the action." Civ.R. 55(A). The statute does not refer to pre-action discussions or proceedings. As reasoned by the Third District:

> Defendant-Appellant has failed to direct us to any authority holding that communications made prior to the initiation of a lawsuit can satisfy the appearance requirement of Civ. R. 55(A). On the contrary, our reading of the relevant case law reveals those communications alleged to satisfy the appearance requirement occuring after the commencement of the suit. Consequently, in our view, for purposes of Civ.R. 55(A), this letter was not a manifestation by Defendant-Appellant of his intention to defend a suit that was not yet in existence.

*Hyway Logistics Servs., Inc. v. Ashcraft*, 3d Dist. Hancock No. 5-99-40 (Feb. 2, 2000) (as to a letter sent to the plaintiff's attorney two months before the suit was filed). *See also Hicks v. Extended Family Concepts*, 5th Dist. Stark No. 2010CA00159, 2011-Ohio-3227 (a letter from a nursing home's attorney sent before the complaint was filed but after the estate's 180-day letter was not an appearance in the action).[2]

**{¶62}** Here, the initial statements made by two township officials after receiving the initial notices involved statutory procedures the board could have continued to utilize without court proceedings. *See* R.C. 505.871(A),(C),(D) (allowing the board to classify

---

[2] The rejection of pre-litigation conduct as an appearance for purposes of notice of a default judgment motion has been explained by other state Supreme Courts. *See, e.g., Morin v. Burris*, 160 Wash.2d 745, 161 P.3d 956 (2007), ¶ 3-4, 21-22, 25 (pre-litigation contact does not constitute an informal appearance as that contact must acknowledge the dispute is in court when expressing intent to defend; demonstrating intent to defend before a case is even filed does not qualify as an "appearance in the action" as used in the rule); *Howard, Stallings, From & Hutson, P.A. v. Douglas*, 354 N.C. 346, 553 S.E.2d 680 (2001) (where the appellate judges agreed an appearance in an action cannot be made prior to the filing of a complaint and the Supreme Court adopted the dissenting appellate judge's extension of this principle to a post-complaint but pre-service letter failing to mention the action).

junk motor vehicle and remove it 14 days after notice); R.C. 505.87 (A),(B),(E) (allowing the board to declare vegetation, garbage, refuse, and other debris on land is a nuisance and enter to remove it 7 days after notice). The subsequent notices were a last effort by the board to prompt Appellants to remove (or consent to removal of) items from their property before the board initiated court proceedings (to ensure the safety of those cleaning the property and protect against future liability due to threatening comments made by Mr. Fazekas).

**{¶63}** The board meeting at which Mr. Fazekas appeared did not equate to an appearance in a court action. A clear purpose to defend the suit could not exist as the court action did not yet exist. There were no communications or filings after the court action was filed and served upon Appellants. Consequently, Appellants were not entitled to notice of a default judgment hearing. This assignment of error is improper and lacks merit.

**{¶64}** For the foregoing reasons, the trial court's judgment is affirmed.


D'Apolito, P.J., concurs.

Hanni, J., concurs.

[Cite as *Salem Twp. Bd. of Trustees v. Fazekas*, 2023-Ohio-2984.]

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Jefferson County, Ohio, is affirmed. Costs to be taxed against the Appellants.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**